# Keeney *versus* Good.

1. Possession and use of personal property by one indebted is evidence of his ownership, unless it has been sold under judicial process and purchased in for him, or is held by him in trust. But by the Act of 1848 a married woman may have property in her own right which will not be subject to levy for her husband's debts. Of such property possession by the husband is no test of title.

2. But to bring the property of a married woman within the protection of the Act of 1848, it is necessary to prove that she owns it, as being hers before marriage or that she acquired it afterwards and in what way. Mere evidence *that she purchased it* is not sufficient to give her title—it must be satisfactorily shown that it was paid for with her own separate funds. In the absence of such evidence the presumption is violent that the husband furnished the means of payment.

3. This last rule applies to real as well as personal estate.

4. No mere agreement between husband and wife whether in writing or verbally, will avail as against creditors of the husband without proof that the property belonged to the wife independent of agreement between themselves.

5. An arrangement between a husband and wife that the husband purchase property on *her* credit and manage it as her agent and pay for it out of its proceeds, will not protect it from his creditors.

6. A suit to recover damages for personal property of the wife sold under execution as the property of the husband, should be brought in the name of the husband and wife for the use of the wife, and not in the name of the wife alone.

ERROR to the Common Pleas of *Cumberland county.*

This was an action of trespass by Maria Good, a married woman, against Samuel Keeney, D. Smith, and others, for levying and selling twenty hogs, which she alleged belonged to her, and which were sold by Smith, as sheriff, under an execution issued on a judgment obtained in January, 1852, in favor of Keeney, against John M. Good, *the husband of the plaintiff.*

John M. Good, in 1847, was the owner of the real estate on which he and his wife resided. He failed in 1847, and by deed of voluntary assignment for the benefit of creditors, dated the 31st March, 1847, conveyed real estate to assignees who acted in trust, and distributed through an auditor about $13 or $14 in the hundred to Good's creditors, leaving him largely insolvent, and among his creditors was Samuel Keeney, one of the defendants. The real estate of John M. Good was sold by his assignees at public sale to Jacob Rheem for $1100, and by him sold to Maria Good, the de-

fendant in error, on 16th October, 1848, for $1500, $50 to be paid in hand, and the balance in annual payments of $241.60, with interest. She gave the $50 to Rheem, but where she got it or how it was obtained was not shown on her part; but on the part of the defendants it was proved that in 1844 she got $50 from her mother. It was not shown that she had received in her own right any more money. After this alleged purchase by her was made, Good and his wife entered into an agreement, under seal, by which she appointed him her agent to carry on the distillery and the farm in her name, for which she agreed to pay him $20 per month for his services. The distillery was carried on, and stock was purchased, whiskey made and sold, and various payments made on account of the real estate, two of the instalments remaining unpaid to Rheem.

A witness on part of *plaintiff* testified that seventeen at least of the twenty hogs sold by the sheriff, had been purchased by Good, *as agent of his wife*. That he knew that Good was doing business for his wife.

Another witness testified that in January, 1852, Good purchased grain from him; that he charged it to him *as agent;* that he credited him on the strength of being the agent of his wife. Due-bill was given, signed by him as agent.

Several of the witnesses, produced on the part of the defence, testified that after the purchase from Rheem, they transacted business with Good, and did not understand from him that he was acting as agent of his wife. One of them, however, Kauffman, testified that he worked at the distillery for fourteen months; that the business was done in Good's name ; that he was hired by Good and paid by him ; that he received *some money* from the wife on account of his wages. He further testified, *under objection, that Good told him,* whilst he was living there, that *he was doing business for his wife.* That he quit work there in 1851. That he had got small sums from Mrs. Good.

A policy of insurance, dated 16th July, 1849, was taken by Good *as agent* of his wife.

On the part of the plaintiff, points as follows were submitted :

1. That upon the insolvency of a husband it is not unlawful that he should become the agent of his wife in the transaction of business, either upon her own capital or that furnished or intrusted to her by others. 2. And in this case, if Maria Good purchased the real estate upon her own credit, for the purpose of carrying on the business of distilling, and her husband John Good carried it on as her agent, and thereby the means of paying for the property were earned, it was a legal and rightful appropriation of the means and not fraudulent. 3. If the facts be as stated in the first and second points, and the hogs, the value of which is the subject of this suit,

[Keeney *v.* Good.]

were purchased by and in the name and upon the credit of Maria Good, it was a lawful transaction; and the fact that they were paid for by the labor and exertions of John Good, her husband, acting as her agent, does not make it less so.

On the part of the *defendants* was submitted a point as follows :—

The plaintiff claims to be the owner of the property charged in the declaration to have been taken away, by purchase during her coverture and after the insolvency of her husband. Under such circumstances she must show by evidence which does not admit of a reasonable doubt, that she bought it with her own money, and paid for it with funds which were *not* furnished by her husband. No such evidence has been given in this case. The plaintiff therefore is not entitled to recover, and the verdict should be for the defendants.

GRAHAM, J., answered in the *affirmative* the points submitted on the part of the plaintiff.

As to the defendant's point, he said,. "We answer the first part of this point in the affirmative. The plaintiff must show by evidence which does not admit of a reasonable doubt that she bought the property with her own money, and paid for it with funds which were not furnished by her husband; but we decline saying to you that there is no such evidence in this case, and that therefore the plaintiffs cannot recover."

He added: "You will inquire whether the agency was a fair *bonâ fide* transaction, entered into between the husband and wife for the purpose of enabling an insolvent man to support his wife and family. If it was, and if Mrs. Good paid the fifty dollars, hand money on the purchase of the real estate, out of her own means not furnished to her by her husband, and if the balance which has been paid on the real estate and the price of the hogs bought was made out of the business conducted honestly and fairly by her husband for the object stated, then the plaintiff may recover; but you must be satisfied of these facts by clear, satisfactory, and undoubted evidence on the part of the plaintiff.

"On the contrary, if the agency of the husband was merely colourable; if the arrangement was entered into to enable the husband to secure his property from his creditors, with an understanding that the property was his and not his wife's, then the law would not lend its sanction to such arrangement, and the defendants would be entitled to your verdict."

Verdict was rendered for plaintiff for $247.24.

Error was assigned: 1st. To the admission of the evidence of Kauffman. 2d. To the answer to the 2d and 3d points of plaintiff. 3d. In *not* answering affirmatively the points of defendants. 4th. In

[Keeney *v.* Good.]

submitting to the jury as a question of fact to be determined by them, without any evidence in the case to support it, whether these hogs were purchased and paid for by Mrs. Good with her own money independent of her husband. 5th. In saying to the jury that " although no action could be brought against Mrs. Good on a note signed in this way, she would be liable in another form of action for the amount, if the purchase was made by her husband, as her agent, and she received the property thus purchased, or the benefit of it." 6th. In submitting to the jury as a question of fact to be determined by them, whether the agency of John M. Good for Maria Good was a fair and *bonâ fide* transaction, &c.

In the Act of 11th April, 1848, it is *inter alia* provided, "Every species and description of property, whether consisting of real, personal, or mixed, which may be owned or belong to any single woman, shall continue to be the property of such woman as fully after her marriage as before; and all such property, of whatever name or kind, which shall accrue to any married woman during coverture by will, descent, deed of conveyance or otherwise, shall be owned, used, and enjoyed by such married woman as her own separate property; and the said property, whether owned by her before marriage, or which shall accrue to her afterwards, shall not be subject to levy and execution for the debts or liabilities of her husband, nor shall such property be sold, conveyed, mortgaged, transferred, or in any manner encumbered by her husband, without her written consent first had and obtained, and duly acknowledged, &c. Provided that her said husband shall not be liable for the debts of the wife contracted before marriage. Provided, that nothing in this Act shall be construed to protect the property of such married woman from liability for debts contracted by herself, or in her name by any person authorized so to do, or from levy and execution on any judgment that may be recovered against a husband for the *torts* of his wife, and in such case execution shall be first had against the property of the wife."

*Hepburn* and *Biddle,* for plaintiff in error.—The declarations of the husband were not admissible in favor of his wife: 6 *Harris* 363, Gamber *v.* Gamber.

A married woman generally has no capacity to contract with or without her husband: *Chitty on Contracts* 176–7. The husband is entitled to all moneys earned by her skill or labor: *Glancy,* page 3; 15 *East* 606. A husband and wife cannot by agreement between themselves change their legal capacities, and a woman cannot be sued as a *feme sole* whilst her husband resides in the kingdom: 8 *Term Rep.* 545; 2 *Story,* sec. 1372, 1375. Personal savings and profits which the husband allows her to apply to her separate use are allowed to vest in her as against her husband, but

[Keeney v. Good.]

*not against his creditors:* Story 1375; 2 *Kent* 166; 7 *Pick.* 533–7. (See 8 *Harris* 308, Raybold v. Raybold.)

There are no *feme sole* traders in Pennsylvania, but such as come within the Act of 1718: 5 *W. & Ser.* 346. For money borrowed by a wife to carry on a business with the husband's assent, the husband is liable: 2 *Freeman* 215.

The Act of 1848 was meant to protect the property of married women owned by them before marriage or acquired *fairly* after marriage—meaning that in case of purchase the consideration should be paid *out of her own means.* It was not designed to affect the common law incidents of marriage further than is provided in it: 6 *Harris* 363, Gamber v. Gamber.

*Watts,* with whom was *Parker,* for defendant.—The fairness of the transaction was decided upon by the jury. The declarations of the husband were admissible as part of the transaction. Whatever were the common law rights of the husband and wife, equity always protected the separate property of the wife from the improvidence or misfortune of her husband. The husband may be trustee for his wife; and if property be settled to the separate use of the wife, and there be no trustee to support it, the husband will be considered trustee, though he was not a party to the instrument: 2 *Kent* 162 The 6th section of the Act of 1848 provides that all property that shall accrue to a married woman shall be *owned, used, and enjoyed* by her as her own separate property; that it shall not be liable for his debts, and that he shall not transfer it. It is contended on part of the plaintiffs *in error,* that if the husband be insolvent he shall not aid his wife in the use of her property without the risk of subjecting it to his debts. But it was said that one object of the Act of 1848 was to enable a wife to have separate property, and if she please, do business in order to support her family. Also cited 7 *Watts* 547, Holdship v. Patterson; 5 *W. & Ser.* 323; 1 *Jones* 275, Cumming's Appeal; 1 *Harris* 480, Goodyear v. Rumbaugh; 4 *Id.* 134; 5 *Barr* 157; 5 *Wh.* 138.

The opinion of the Court, filed July 25, was delivered by

BLACK, C. J.—The plaintiff is the wife of John M. Good, who owned certain lands on which a distillery was built. Becoming insolvent in 1847, Good made an assignment for the benefit of his creditors. The assignee sold the land to one Rheem for $1100, and by Rheem it was subsequently conveyed to Mrs. Good, the present plaintiff, for the consideration of $1500. Of this sum, $50 were paid at the time the deed was made, and the bonds and mortgage of both the husband and wife were afterwards given for the balance. About $1000 of principal and interest seems to have been paid on the bonds. Immediately after the deed to Mrs. Good, she and her husband made a written agreement that the husband

[Keeney *v.* Good.]

should carry on the business of farming and distilling in her name, accounting to her for the profits, and receiving from her wages at the rate of $20 per month. While he was doing business under this agreement, he bought a lot of hogs, brought them to the distillery, and fed them there for a time. The defendants levied on them as the husband's property, and the wife brought this action of trespass.

Upon these facts the defendants asked the Court for a peremptory charge in their favor. This the Court refused, but on the contrary submitted the case to the jury, with instructions to find for the plaintiff if the agreement was an honest one, made for the purpose of enabling an insolvent man to support his family, and if the first $50 was paid with the wife's money, and the balance out of the profits of the business.

An insolvent man is well protected in Pennsylvania. The barbarous system of imprisonment for debt is totally abolished, and thrown aside among the rubbish of the dark ages. He can retain real property or goods to the value of $300, which his creditors may not touch. He cannot be prevented from applying the fruits of his personal industry to the maintenance and education of his family; for the wages of his labor are not liable to attachment. But after supporting his family, he must give the best exertions of his mind and body to his creditors. This is but his reasonable duty—a duty sanctioned by all laws, moral, civil, and divine. No effectual mode of evading it has yet been invented. The usual device of covering the property of the debtor under the name of some friend, or a member of his family, will only answer the purpose as long as it remains undiscovered. I need not say how deeply all such shams are branded by the law with the marks of its detestation.

Creditors may regard the mere possession and use of personal property by a debtor as evidence that no stranger has a right to it, unless it has once already been taken for his debts, and bought in for him at a judicial sale, or unless he has it as a borrower or other bailee. But by the act of 11th April, 1848, a married woman may have property in her own right which shall not be subject to levy for her husband's debts. Of such property possession is no test of title. The rule in Twyne's Case, cannot, in the nature of things, be applied to a wife's goods in favor of her husband's creditors, without either compelling a separation or rendering the law inoperative. He may ride in her carriage, eat at her table, sleep in her bed, and live in a house filled with her furniture, without making what he uses liable to be seized under an execution issued against him. Under such a system, what is to restrain an indebted man from keeping all he has in the name of his wife? The one human being whose whole earthly interest is bound up in his own, is freed from the restraint of a

[Keeney *v.* Good.]

rule which is necessary to prevent even strangers from becoming the instruments of his frauds. It is easy enough to let the wife make all the purchases; or the husband may make them himself professedly as her agent. And if the burden of proving that the money was furnished by the husband is thrown upon the creditors, their hope of justice must always be a forlorn one. Thus administered, the act of 1848 would be the worst one ever passed, and the most poisonous to the morals of the people. It would hold out constant temptations to families in embarrassed circumstances to commit wrongs of the worst kind, and to uphold them by imposture and falsehood.

But there is nothing in the act of 1848 which makes such consequences at all necessary. To bring the property of a married woman under its protection, it is made necessary by the letter, as well as the spirit of the statute, to prove that she *owns* it. She must identify it as property which was hers before marriage, or show how she came by it afterwards. Evidence that she purchased it amounts to nothing unless it be accompanied by clear and full proof that she paid for it with her own separate funds. In the absence of such proof, the presumption is a violent one that her husband furnished the means of payment. This was the rule laid down in Gamber *v.* Gamber (6 *Harris* 363), and must be rigidly adhered to. It applies to purchases of real estate as well as personal. No agreement of the husband and wife about the property of either, whether it be made in writing or by parol, can avail against creditors without proof which will render the fact indubitable that it was hers independent of all agreements between themselves. An arrangement to buy property on her credit, and have it managed and paid for by him as her agent, is too unsubstantial and too easily shammed to be at all satisfactory. All these things can be done by mere words, and words are but breath.

The hogs in question here were purchased and paid for by the husband himself. It is said he paid for them as his wife's agent out of the profits of her distillery. But what was the evidence of her title to that? It was nominally conveyed to her, and she handed the first fifty dollars over to the grantor. There was no spark of evidence that the money she paid was her own: her counsel have not asked us to believe that these were the same fifty dollars which she had received four years before from her father's administrator. All the subsequent payments were met by the husband. From these facts we can make but one inference, and that is that Good paid for the land himself. It was therefore his to all intents and purposes, and all it produced was his. An agreement with his wife to manage his own property as her servant, and to account to her for the profits, will of course not protect it against his creditors.

We are unanimously and clearly of opinion that the defendants had a right to the instructions they prayed for. They were as well entitled to a verdict as if the plaintiff had given no evidence at all.

The suit should have been brought in the name of the husband and wife, to the use of the wife. The form of the action was not objected to, and is no reason for reversing the judgment. I mention it merely to show that it has not our approbation.

Judgment reversed and *ven. fa. de nov.* awarded.