Keystone Watch Case Company, Appellant, *v.* Fourth Street National Bank.

| 194 | 535 |
| e205 | ¹232 |
| 194 | 535 |
| 213 | ¹403 |

*Bailment—Contract—Possession—Fraud.*

Where goods are delivered by one person to another without an intention to pass the title, and the purpose of the contracting parties is as between themselves an honest one, and there is no concealment as to creditors of its true nature, the contract is not constructively fraudulent.

Under a written contract goods were consigned by a manufacturer to a retail dealer, in trust to sell the same at not less than a specified price, the proceeds to be at once remitted to the owner; all sales to be made by the dealer as agent, and so billed, the owners to have the right at any time to terminate the contract and take back the goods; the dealer to deduct nothing for services or expenses out of the proceeds, but when a certain specified amount shall have been paid over to the owner, the balance of the goods then remaining unsold and the outstanding accounts shall become the individual property of the dealer. *Held*, that the contract was a valid bailment, and was not fraudulent as to creditors.

Argued Jan. 15, 1900. Appeal, No. 293, Jan. T., 1899, by plaintiff, from judgment of C. P. No. 1, Phila. Co., March T., 1898, No. 990, on verdict for defendant. Before GREEN, C. J., MITCHELL, DEAN, FELL, BROWN and MESTREZAT, JJ. Reversed.

Sheriff's interpleader. Before BRÉGY, J.

The facts are fully stated in the opinion of the Supreme Court.

The court gave binding instructions for defendant. Plaintiff appealed.

*Error assigned* was in giving binding instructions for defendant.

*Samuel M. Hyneman*, for appellant.—The contract was a valid bailment: Forest v. Nelson, 108 Pa. 481; Ott v. Sweatman, 166 Pa. 229; Peek v. Heim, 127 Pa. 500; Becker v. Smith, 59 Pa. 469; Brown Bros. & Co. v. Billington, 163 Pa. 76; Myers v. Harvey, 2 P. & W. 478; McCullough v. Porter, 4 W. & S. 177; Monjo v. French, 163 Pa. 107.

In the following cases, although an interest as owner was to

be acquired by the bailee for the use or sale, or lessee or other party ultimately interested, the right of the bailor, lessor or vendor was sustained against the creditors of the other party: Enlow v. Klein, 79 Pa. 488; Henry & Co. v. Patterson, 57 Pa. 346; Edwards's App., 105 Pa. 103; Ditman v. Cottrell, 125 Pa. 606.

The person having a special property may employ as bailee one having a reversionary interest: Clark v. Iselin, 21 Wall. 360; White v. Platt, 5 Denio, 269; Moors v. Wyman, 146 Mass. 60; Kellogg v. Tompson, 142 Mass. 76.

*Hazard Dickson*, with him *Richard C. Dale*, for appellee.— The contract was a sale: Jenkins v. Eichelberger, 4 Watts, 121; Brunswick & Balke Co. v. Hoover, 95 Pa. 508; McCullough v. Porter, 4 W. & S. 177; Morgan-Gardner Electric Co. v. Brown, 193 Pa. 351; Prichett v. Cook, 62 Pa. 193; Stadtfeld v. Huntsman & Co., 92 Pa. 53.

OPINION BY MR. JUSTICE DEAN, February 5, 1900:

This was a feigned issue under the sheriff's interpleader act. The defendant bank, a judgment creditor of Williams & Ulmer, a firm of jewelers doing business in Philadelphia, levied upon the goods in dispute as the property of their judgment debtors. The plaintiff, the Keystone Watch Case Company, averred the goods belonged to it, and were in possession of Williams & Ulmer as agents or bailees. The contract under which the judgment debtors held possession of the goods was in writing, and the issue turned almost wholly on a construction of the instrument. The learned judge of the court below was of opinion, that as between creditors of Williams & Ulmer, and the alleged bailors, the writing constituted a conditional sale, with a secret lien in favor of the vendor, and therefore, constructively fraudulent, and consequently that the goods were subject to seizure at suit of the creditors. He thereupon directed a verdict for defendant, and we have this appeal by plaintiff, assigning for error the opinion of the court.

In the eighty years that have elapsed since the decision of Clow v. Woods, 5 S. & R. 275, the rigor of the rule laid down in that case, and it is the leading one in this state, has been greatly relaxed; nor, considering the progress in population and

wealth, and the change in methods of conducting business, could it have been strictly adhered to, without great obstruction to business and hardship to individuals. Under that ruling, the cases were rare, where, as to creditors the ownership of chattels could be in one and the possession in another; in such circumstances, with few exceptions, the transaction was constructively fraudulent as to creditors. But, in the long line of cases following it, step by step, the rule has been so softened, that now, it may be said, with few exceptions, where the purpose of the contracting parties was, as between themselves, an honest one, and there was no concealment as to creditors of its true nature, the contract is not constructively fraudulent; in other words, the law will be slow to hold the parties scamps, constructively, if the contract, in view of its purpose, was actually an honest one. And the commencement of the change in judicial opinion is markedly noted in McCullough v. Porter, 4 W. & S. 177, decided twenty years later where GIBSON, C. J., who rendered the opinion in Clow v. Woods, says: "What then was this contract? The plaintiffs simply agreed to consign goods to an insolvent friend, to be sold on their account, for not less than the invoice prices; and the proceeds, to the value of those prices, were to be remitted to them, or the goods returned. Thus, the excess of the sales over the invoice prices was to be the amount of the commissions; and that it was to be contingent, is the only feature of the case which differs it from an ordinary consignment on commission. Hence, it is urged with apparent plausibility, that the same consequences would be produced by a sale. But at whose risk were the goods in the custody of the consignee? The very purpose of the arrangement was to protect them from his creditors, and to effect it, required that they should be in reality the property of the consignors, who must consequently have agreed in good faith to take upon themselves the risks incident to the ownership in order to carry out the plan." The transaction was held not constructively fraudulent as to creditors, but one in which the possessor of the goods was the mere agent of the consignors. And such has been the trend of judicial utterance down to the case of Brown Bros. & Co. v. Billington, 163 Pa. 76, where in an exhaustive opinion, reviewing most of the authorities, our Brother GREEN concludes that, "Where a person receives

goods of another under an agreement, by which he is to keep them during a certain period, and if within that time he pays for them, he is to become the owner, but otherwise he is to pay for the use of them, he receives them as bailee, and the property in the goods is not changed until the price is paid." In the case before us, the goods were by the contract consigned by the watch company, manufacturers, to Williams & Ulmer, retail dealers, in trust to sell the same at not less than a fixed price marked in a schedule, the proceeds to be at once remitted to the owner; no sales to be made on credit without its express consent; all sales to be made by consignees as agents, and so billed on special billheads; the owner to have the right at any time to terminate the contract and take back its goods. It is not seriously argued that up to this point, the consignees were other than agents of the owners, but it is earnestly argued, that this further stipulation constituted the transaction a conditional sale, with an attempt by the vendor to retain a secret lien upon the goods, which made void the contract as to creditors.

"The undersigned is not to receive any allowances for services or expenses out of the proceeds of the sales made by it hereunder, but its only benefit and compensation is to be this: If said Keystone Watch Case Company shall continue the undersigned as trustee hereunder until out of the said sales said Keystone Watch Case Company shall have received the sum of twelve thousand nine hundred and thirty-six 91–100 dollars, the balance of said goods then remaining unsold and the outstanding accounts shall become the individual property of the undersigned."

We do not see that this stipulation makes any change in the nature of the transaction. It simply fixes the extent of the agent's compensation; makes it to depend solely on the sale price in excess of the schedule value. The owners must get $12,936.91, and no less; the agent shall have as compensation the difference between that sum and what he succeeds in getting for the goods in excess of it. His character is not changed from an agent to sell into that of a purchaser. It is in substance, the illustration put by Gibson, C. J., in McCullough v. Porter, supra: "Were I to put my horse into the custody of a friend to be sold for a designated sum, with permission to retain whatever could be got beyond it, it would not be sus-

pected that I had ceased to own him in the mean time, or that my friend would not be bound to return him, even without a stipulation, should he have failed to obtain the prescribed price."

We think the court below erred in directing a verdict for defendant, therefore, the judgment if reversed.