# Anna May Huffman *v.* R. C. McIlvaine, Appellant, and S. R. Wright.

*Sale—Transfer of possession—Statute of frauds.*

A sale of property is not good against the creditors of the vendor unless possession is delivered by the vendor in accordance with the sale. When the subject of the sale is capable of an actual delivery, such delivery must accompany and follow the sale; but when the property is not capable of an actual delivery, a constructive delivery will be sufficient, and in such cases it is only necessary that the vendee assume the control of the property so as reasonably to indicate to all concerned the fact of the change of ownership.

When the vendor and vendee are members of the same family, and the property consists of chattels used in, or in connection with, their common home, the vendee is not bound to turn the vendor out of doors in order to separate him from the property; a constructive delivery is sufficient.

Where a defendant in an execution executes a bill of sale to the plaintiff in the execution for personal property on a farm, and the plaintiff immediately assigns the bill of sale to the defendant's father-in-law, and on receipt from him of a note for the debt, satisfies the judgment, and the father-in-law contemporaneously executes a bill of sale for the same property to his daughter, the defendant's wife, and shortly afterwards delivers the bill of sale to her with the statement that it is an advancement, and no

actual change in the location of the property is made, the daughter is entitled to hold the property against a subsequent execution creditor of her husband.

*Appeals—Harmless error—Reading authorities to jury.*

While it is not a safe practice to read extracts from opinions of the Supreme Court to the jury, yet if the extracts read do not particularly refer to the facts in their respective cases, and the law is applicable to the case in hand, it is not reversible error.

*Execution—Wrongful sale—Damages.*

In an action to recover damages for a wrongful levy and sale of personal property, a judgment in favor of the plaintiff will not be reversed because of some testimony that part of the fund raised by the sale was paid to a tax collector, if the defendant offers no competent evidence that such sum went to the liquidation of taxes for which the property was legally liable.

Argued April 19, 1899.   Appeal, No. 143, April T., 1899, by R. C. McIlvaine, from judgment of C. P. Washington Co., Nov. T., 1897, No. 112, on verdict for plaintiff.   Before RICE, P. J., BEAVER, ORLADY, SMITH, W. W. PORTER, W. D. PORTER and BEEBER, JJ.   Affirmed.   Opinion by W. D. PORTER, J.

Trespass for an alleged illegal sale of personal property. Before TAYLOR, J.

The facts appear in the opinion of the court.

The court charged in part as follows :

Now, gentlemen of the jury, it is undoubtedly the law of this state, and it is a very wise law,—it is said in an early case to be the magna charta of the law of Pennsylvania on the subject of actual and legal frauds in the transfer of chattels,—that one of you is the acknowledged, reputed and real owner of personal chattels, if you are financially embarrassed, or for any consideration, transfer that property by a bill of sale to your neighbor whom you may owe, and he accepts that transfer of title, but allows you to keep in your possession, without a transfer of possession, the various chattels or items of personal property, stock, that he is known to have owned,—that is what is called in law a legal fraud on your creditors, and they may come on, notwithstanding those facts, and seize that property under their writ and take it out of your possession and sell it and retain it

in law as your property, which they have taken under execution. The transaction as between you and the neighbor to whom you gave a bill of sale and who allowed you to retain the property, is valid and binding in law as between yourselves, but it is recognized as against third parties and other creditors of yours as a fraud in law, although, as we said, the transaction between you and your neighbor is perfectly right and proper, which takes it out of the category of fraud in fact. If it was a bogus transaction between yourselves,—was without consideration, or value, but done to defeat creditors, it would be a fraud in fact. But because property, personal chattels particularly, are of such a movable nature, and, we may say, capable of manual delivery and change of possession, in order that the channels of business in that line may not be disturbed or interrupted, and that men may know how they are dealing one with another in that class of property, personal chattels, the law has laid down a strict rule, and makes it the duty of the court to say, when the facts of a case are as in the illustration I have just used, to cover a case of that kind—make it incumbent upon the court to say to the jury that that is a fraud in law and take the case from the jury, which we were asked to do yesterday in this case by the learned counsel for the defense when he made his motion for a compulsory nonsuit.

[There is a line of cases, gentlemen of the jury, in the books, which say that that rule, referring to the rule I have just given to you, in one of which Justice PAXSON says, in Evans v. Scott, 89 Pa. 136, "there was a time when this ruling might not have been error;" that is, the learned judge below having ruled that a transfer under any circumstances where actual possession of the property was not taken, no matter what the character of the property was, was a fraud in law against creditors. "There was a time," he says, "when this ruling might not have been error. But there is a line of authorities which to some extent has modified the doctrine of those cases. There are many instances in which from the necessity of the case there can only be a constructive delivery of possession. In such cases the jury must decide whether there is fraud in fact under proper instructions from the court. The question should have been submitted to the jury whether the change of possession was actual and bona fide, not pretended, deceptive and collu-

sive, and whether such change of possession was all that could reasonably be expected of the vendor (that would be Jones in this case), taking into view the character and situation of the property, and the relations of the parties," that would be Huffman and his wife. So, gentlemen of the jury, we might read to you a number of cases making exceptions to the rule, but this one states the principle which we think should control the court, and has controlled the court, in submitting the question to you, whether or not the transfer of this property by bill of sale here by Jones to Anna May Huffman, the plaintiff in this case, which at one time was A. McI. Huffman's property, as has been testified to, was in good faith, was a bona fide transaction and not pretended, deceptive and collusive, and whether such change of possession was all that could be expected of the vendor, taking into view the character and situation of the property and the relation of the parties. And in another case it is laid down as the rule, gentlemen, that a change in the location of the property is not always essential to protect the property against the creditors of the vendor. If the purchase was in good faith and for a valuable consideration, followed by acts intended to transfer the property as well as the title, and the vendee assumed such control of the property as to reasonably indicate a change of ownership, the delivery of possession cannot, as a matter of law, be held insufficient. A case under such circumstances should go to the jury to find whether the sale was in good faith or merely colorable.] [7]

＊    ＊    ＊    ＊    ＊    ＊    ＊    ＊

[So if your verdict should be for the plaintiff in this case, it would simply be for $255, with interest from September 30, 1897, when the property was sold and taken away. The amount here claimed is $255.35, as the property sold, and Mr. Wright testified that he returned from twenty-five to thirty-five cents to Mrs. Huffman, as surplus after paying the costs. Of course, gentlemen of the jury, if your verdict is for the defendants, you simply return your verdict for the defendants. For the plaintiff it would be for $255, with interest from September 30, 1897, and add it into the verdict and not return it separate, because there is no dispute that the property which passed by a bill of sale from A. McI. Huffman to Alexander, and Alexander to Jones, and Jones to his daughter, is the identical property which was

sold, a portion of it was sold, and reported in this vendue paper.] [8]

Defendant's points and the answers thereto among others were as follows :

[1. The claimant having admitted that the property in dispute remained in the possession of her husband (defendant in the execution) and was never delivered to Alexander & Company, the purchaser, through whom she derived her title, the property being susceptible of actual delivery, said Alexander & Company, took no title which would be good as against creditors of her husband, and hence could not pass, either mediately or immediately, any better title than they had gained, and could not pass to her, title good as against her husband's creditors.  The verdict therefore must be for the defendants.  *Answer :* Under the undisputed facts of this case, this point is refused.  It states but a portion of a single transaction.] [1]

[3. It being conceded that there was no actual delivery and change of possession of the property in dispute from A. McI. Huffman to Alexander & Company, the bill of sale was ineffectual to pass the title of said property as against R. C. McIlvaine, a creditor of said Huffman, and the verdict of the jury must be for the defendants.  *Answer :* Under the undisputed facts of this case, this point is refused.  It states but a portion of a single transaction.] [2]

[4. The plaintiff, claiming the property in dispute as a gift from her father, Noah Jones, must show a title complete in her father as against her husband's creditors ; and, as no actual delivery and change of possession of said property to either Alexander & Company, or said Jones, is claimed, neither said property nor any title to it ever passed to Noah Jones as against R. C. McIlvaine, one of said creditors, and the verdict of the jury must be for the defendants.  *Answer :* The question raised by this point must be submitted to the jury.  A change in the location of the property is not always essential to protect the property against the creditors of the vendor.  If the purchase was in good faith, and for a valuable consideration, followed by acts intended to transfer the possession as well as the title, and the vendee assumed such control of the property as to reasonably indicate a change of ownership, the delivery of possession cannot, as a matter of law, be held insufficient.  The

case under such circumstances must go to the jury to find whether the sale was in good faith or merely colorable, and therefore that point would be refused.] [3]

[5. If the jury find from all the evidence that there was never any actual delivery and change of possession of the property in dispute, from A. McI. Huffman to Alexander & Company, accompanying the bill of sale, then said bill of sale was ineffectual to pass said property or any title thereto, as against R. C. McIlvaine, a creditor of said Huffman, and the verdict of the jury must be for the defendants. *Answer:* This point is refused as it states but a part of a single transaction between the parties.] [4]

[6. If the jury find from all the evidence that the plaintiff claims the property in dispute as a gift from her father, Noah Jones ; that the only source of title thereto in said Jones is the bill of sale to Alexander & Company, assigned to said Jones; and that there was never any actual delivery and change of possession of said property from A. McI. Huffman to either Alexander & Company, or Noah Jones, accompanying said bill of sale, then neither said property nor any title thereto ever passed to said Jones, and the plaintiff never had any title to said property, as against R. C. McIlvaine, a creditor of her husband, A. McI. Huffman, and the verdict of the jury must be for the defendants. *Answer:* Refused. In determining the kind of possession necessary to be given, regard must be had, not only to the character of the property, but also to the nature of the transaction, the position of the parties and the intended use of it. No such change of possession as will defeat the fair and honest object of the parties is required : Evans v. Scott, 89 Pa. 136 ; Crawford v. Davis, 99 Pa. 576 ; McClure v. Forney, 107 Pa. 414 ; Cessna v. Nimick, 113 Pa. -70 ; Renninger v. Spatz, 128 Pa. 524.] [5]

[8. Under all the evidence, the verdict of the jury must be for the defendants. *Answer:* Refused.] [6]

*W. S. Parker,* with him *Winfield McIlvaine,* for appellant.— If it was not intended by the parties to pass title to Alexander & Company, then the bill of sale was merely colorable and intended to give a false appearance to the transaction. Unusual and unnecessary formality in such transactions is generally a

badge of fraud rather than of honesty: Garretson v. Hackenberg, 134 Pa. 107. Steelwagon v. Jeffries, 44 Pa. 407, is so closely analogous to the case at bar as to clearly rule its determination.

*James I. Brownson, Jr.*, for appellee.—In determining the kind of possession necessary to be given regard must be had, not only to the character of the property, but also to the nature of the transaction, the position of the parties, and the intended use of the property. No such change of possession as will defeat the fair and honest object of the parties is required: Crawford v. Davis, 99 Pa. 576; Ziegler v. Handrick, 106 Pa. 87; McClure v. Forney, 107 Pa. 414; Evans v. Scott, 89 Pa. 136; Steelwagon v. Jeffries, 44 Pa. 407; Weller v. Meeder, 2 Pa. Superior Ct. 488; Bell v. McCloskey, 155 Pa. 319.

It is self evident that the change of possession required to perfect a gift is not the same between husband and wife as between strangers. The custody of the wife cannot be an exclusive possession, for that would be a virtual divorce of the parties: Larkin v. McMullin, 49 Pa. 29; Endlich & Richardson, M. W. sec. 204; Manderbach v. Mock, 29 Pa. 43; Gamber v. Gamber, 18 Pa. 363; Skinner v. Kroh, 4 Penny. 204.

OPINION BY W. D. PORTER, J., March 21, 1900:

This was an action of trespass for an alleged illegal sale of personal property of the plaintiff, upon an execution against her husband. The plaintiff lived with her husband upon a farm in which he had a life estate. There was a mortgage of $2,098.58 upon the farm, and the husband was indebted in other amounts to various parties. Alexander & Company held two judgments against the husband, and on September 6, 1897, they issued executions, which became first liens upon the personal property of Huffman, upon his farm. On September 9, 1897, Huffman, the execution defendant, and his father-in-law, Noah Jones, went to the banking house of Alexander & Company in Monongahela city, and there had a consultation with the execution creditors. Alexander & Company were not willing to accept a bill of sale for the property of Huffman, and discharge him of his indebtedness. It was finally agreed that Huffman should make and deliver a bill of sale for the personal property of the farm, and an agreement to convey the incumbered life

estate in the land to Alexander & Company; that Alexander & Company should thereupon sell the property and assign the bill of sale therefor to Noah Jones, who should give to Alexander & Company his personal note for the full amount of the indebtedness of Huffman to the banking house, and that thereupon Huffman should be discharged of the debt, and the execution should be stayed and the judgment satisfied. All the parties went to the office of the attorney of Alexander & Company, and there a bill of sale was prepared by which A. McI. Huffman sold, assigned and transferred to Alexander & Company a lot of farming implements and stock upon the farm, the same being fully enumerated in the bill; also his life estate in the farm, for which he covenanted to make a more formal deed and transfer. Alexander & Company immediately assigned this bill of sale to Noah Jones, with written direction that the deed for the life estate in the land be made unto Noah Jones, and thereupon Noah Jones executed an assignment and transfer of the same to his daughter, Anna May, wife of A. McI. Huffman, in consideration of natural love and affection, as well as an advancement, but saying nothing as to the life estate in the land, and at the same time delivered to Alexander & Company his note for $975, being the amount of the indebtedness of Huffman. On September 10, 1897, the executions of Alexander & Company against Huffman were stayed and the costs paid. Noah Jones, on September 11, 1897, rode over to the Huffman home, on the farm in question, and there delivered to his daughter, Anna May Huffman, wife of A. McI. Huffman, the bill of sale, told her that he gave the property to her and that he charged it as an advancement against her interest in his estate, and she accepted it on those conditions. On September 14, 1897, an execution was levied upon the personal property on the farm, included in the bill of sale, at the suit of R. C. McIlvaine, S. R. Wright acting as constable at the levy and sale. The plaintiff promptly gave the parties notice of her title, but they proceeded and sold, notwithstanding that notice, and this action is the result. On September 15, 1897, Andrew McI. Huffman executed a deed for the life estate in the land, in accordance with the terms of the bill of sale to Alexander & Company, which deed was duly delivered and recorded the same day.

There was testimony that the plaintiff had, on either the evening of the 11th, which was Saturday, or on the 13th, which was Monday, of September, 1897, notified the hired man working on the farm that he would thereafter be working for her. The grounds of defense in the court below and the allegations of error upon this appeal were all based upon the allegation that the transfer of the property was fraudulent in law, because of retention of possession by the vendor. The learned court below instructed the jury that if the bill of sale to Alexander & Company was for full value, in satisfaction of the debt of A. McI. Huffman, yet if that transfer and what followed was made for the purpose of taking the property out of the possession of said Huffman and out of the grasp of his creditors, with a view to hinder, delay and prevent R. C. McIlvaine, or other creditors, from taking it in satisfaction of their claims, then the transfer was fraudulent and the verdict must be for the defendant, and further submitted to the jury this question, " Whether or not the transfer of this property by bill of sale here by Jones to Anna May Huffman, the plaintiff in this case, which at one time was A. McI. Huffman's property, as has been testified to, was in good faith—was a bona fide transaction and not pretended or deceptive and collusive, and whether such change of possession was all that could be expected of the vendor, taking into view the character and situation of the property and the relation of the parties." Under these instructions the jury found in favor of the plaintiff. The first five assignments of error are based upon the assumption that the sale was void, because Alexander & Company did not, during the moment that they had title to the property under the bill of sale, take manual possession thereof. This contention would entirely disregard the intention of the parties, which the jury have found to be bona fide and honest. Alexander & Company at that time had an execution which bound this very property, and, if the evidence is to be credited, would have wiped it out twice over. The purpose of Jones was to avoid this, and by giving the property to his daughter as an advancement enable her to retain the necessary implements and stock for the operation of the farm. Alexander & Company immediately assigned the bill of sale to Jones and received from him his note, releasing Huffman from liability. At the same time Jones executed a bill of sale trans-

ferring the personal property to his daughter. She was not then present, and lived at a considerable distance. The whole negotiation was in effect but one transaction, and the result was to vest the title to the property and the right of possession thereto in Anna May Huffman, the plaintiff in this case. With reasonable promptness Noah Jones delivered all three bills of sale to his daughter and told her that the property was hers. There was probably more writing done than was absolutely necessary in this case, but we cannot see that, under the circumstances, any badge of fraud was exhibited, for the various bills of sale indicated the sources from which different considerations moved. Huffman desired to be rid of his debt to Alexander & Company; Alexander & Company demanded the individual note of Jones as a condition precedent to the release of Huffman, and it was agreed between them, in order to accomplish this result, that Huffman should sell and convey the property to Alexander & Company, and that Jones should deliver his note to Alexander & Company and receive an assignment of their title to the property. The consideration which moved Jones was the desire to provide for his daughter. The various transfers were simultaneous, and if Mrs. Huffman took such possession of the property as was required by law that was all that was necessary. To have driven the horses to Monongahela city and delivered them to Alexander & Company, and then for Alexander & Company to have driven them over to Jones, and then Jones to have driven them to his daughter's, where they started from, when they all knew that that was the ultimate destination of the horses, would have been an exceedingly suspicious chain of circumstances, and one which the law certainly did not require them to go through with.

The sixth assignment of error raises the question of the sufficiency of the evidence of the transfer of possession under the sale, as against the creditors of the vendor, to carry the case to the jury. It is argued that the submission of this case to the jury on the question of fact as to actual fraud, if held to be right, does away with the rule of law established in Clow v. Woods, 5 S. & R. 275. The rule laid down in Clow v. Woods is not so incapable of accommodation to modern conditions as is sometimes asserted. In his opinion in that case Mr. Justice GIBSON clearly recognized the necessity of considering the re-

lation of the parties and the character of the property and the
uses for which it was intended, in determining what was or
what was not a sufficient delivery of possession to be valid, as
against the creditors of the vendor. He says: "A settlement
of personal property at the marriage of the owner is a fair
transaction, and one which the policy of the law does not re-
quire to be deemed fraudulent. All the late cases in which
the transfer has been sustained have gone on the ground that
the want of delivery was absolutely necessary to effect some
fair purpose of the parties." Again: "The inclination of my
mind is, to give the statute a liberal, perhaps an enlarged con-
struction, by putting the rule, requiring a change of possession,
on grounds of public policy, and confining its exceptions to
those cases, where, from the very nature of the transaction,
possession either could not be delivered at all, or, at least, with-
out defeating fair and honest objects, intended to be effected
by, and which constituted the motive for entering into the con-
tract." The general rule is, that a sale of property is not good
against the creditors of the vendor unless possession is deliv-
ered by the vendor in accordance with the sale. When the
subject of the sale is capable of an actual delivery, such deliv-
ery must accompany and follow the sale ; but when the property
is not capable of an actual delivery, a constructive delivery
will be sufficient, and in such cases it is only necessary that the
vendee assume the control of the property so as to reasonably
indicate to all concerned the fact of the change of ownership.
The modern cases which are sometimes said to have modified
the rule of Clow v. Woods, have generally grown out of the
relation of the parties. The sales were attacked, not because
the vendee did not have possession of the property, but because
the vendor had not been removed from contact therewith.
When the vendor and vendee are members of the same family
and the property consists of chattels used in, or in connection
with, their common home, the vendee is not bound to turn the
vendor out of doors in order to separate him from the property ;
a constructive delivery is sufficient: McVicker v. May, 3 Pa.
224 ; Evans v. Scott, 89 Pa. 136 ; Crawford v. Davis, 99 Pa.
576 ; McClure v. Forney, 107 Pa. 414 ; Renninger v. Spatz,
128 Pa. 524 ; Weller v. Meeder, 2 Pa. Superior Ct. 488.

Between strangers open, visible, notorious and exclusive pos-

session is the test of title in all cases where the rights of creditors are involved, for between strangers this rule is capable of enforcement. "But this is not possible with reference to the personal goods of a married woman. She cannot use her property exclusively unless she lives apart from her husband. It was not the intention of the legislature to compel a separation in order to save the wife's rights, but if the rule of exclusive possession were adopted the statute would be inoperative as long as they lived together:" Gamber v. Gamber, 18 Pa. 363; Keeney v. Good, 21 Pa. 349. In the case of Skinner v. Kroh, 4 Pennypacker, 204, the wife purchased goods directly from the husband. The evidence of her title was a bill of sale. The husband and wife continued to live together on the farm, the situation of the property was not changed, and the husband continued his care and charge of it. It was held that it was not essentially necessary that the actual possession of the wife be to the entire exclusion of the husband. She must have a right to the possession, but is not required to live separately from him in order to have such a possession, as the law will protect.

In the present case the position of the plaintiff is stronger than was that of the plaintiff last cited, for the jury have found, and no doubt correctly, that the consideration for the transfer of this property was furnished by her father as an advancement. The property consisted of the farming implements and stock necessary for the operation of the farm, which was their common home. To send this property away from the farm would defeat the very purpose which her benefactor, her father, intended; she could not send her husband away from the farm, and was not by law required to do so; nor could she herself leave her home in order to save the property. All that she could do under such circumstances was to assume such control of it as was reasonable under the circumstances. We are of opinion that the learned judge did not err in refusing to hold as matter of law that the delivery of possession was insufficient. The questions upon which the jury ought to have been required to pass were given them in charge, under full and proper instructions. The sixth assignment of error is dismissed.

The seventh assignment complains of the action of the court in reading from two opinions of the Supreme court. Appel-

lant can hardly expect us to hold the law there cited to be erroneous. It is, perhaps, not a safe practice to read authorities to the jury, for the facts in no two cases are alike, and, as the opinions of the court frequently refer to the facts, it is a safe practice to avoid. The jury cannot always be expected to discriminate between the facts in the case they are trying and the facts in the opinion which they hear read. The extracts from the opinions read to the jury, which are assigned for error, did not particularly refer to the facts in their respective cases, and the law was applicable to the case in hand. The seventh specification of error is dismissed.

The eighth specification of error relates to the measure of damages. It was conceded that the property which was sold at constable sale realized $255, and that this was sold under the execution issued by R. C. McIlvaine and executed by S. R. Wright. It is argued that because there was some testimony that part of this money was paid to the tax collector no recovery ought to have been permitted for that amount. The property was seized and taken by these defendants. If part of it went to the liquidation of taxes for which it was legally liable, they ought to have shown it by some competent evidence, and having failed to do so, they have no right to complain of the instruction.

Judgment affirmed.