## Riggs *v.* Bair, Appellant.

*Sale—Delivery of possession—Coffee—Execution.*

On an issue to determine the ownership of certain coffee levied upon as the property of the defendant in the execution, the plaintiff in the issue claimed that he had bought the coffee from the defendant in the execution and left it with the seller to be roasted; that the seller had set .apart plaintiff's purchase in different piles from the other stock, in the same room, and ` on the front bag of each pile a tag was sewed, giving the plaintiff's name and address, the kind of coffee, and the number of bags. The coffee was to be roasted and delivered to plaintiff as he should from time to time .order. The plaintiff paid part cash, and gave notes for the balance which he subsequently paid. *Held,* that the delivery was valid against the execution creditor.

*Practice, C. P.—Trial—Reservation of question of law.*

A reservation "whether there is any evidence to go to the jury entitling plaintiff to recover," is not a good form. If the reserved question is susceptible of clear and simple statement, it is much the better practice to so state it and thus raise the issue of law directly.

Argued Oct. 27, 1905. Appeal, No. 126, Oct. T., 1905, by defendant, from judgment of C. P. No. 3, Allegheny Co., Feb. T., 1904, No. 1, for plaintiff in case of E. H. Riggs v. H. C. Bair. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Feigned issue to determine the ownership of certain coffee. The facts are stated in the opinion of the Supreme Court.

EVANS, J., after stating the facts, delivered the following opinion :

Binding instructions were given for the plaintiff, subject to the question of law reserved, to wit: whether there was any evidence to go to the jury to sustain the plaintiff's claim to this coffee. The real question reserved was whether the setting apart of the coffee as narrated above constituted such a delivery as would make the sale a valid one against execution creditors.

The rule of law that a sale of personal property without a delivery to the vendee is a fraud against creditors has long been the rule in this state and has not been modified by any recent decisions. But as to what will constitute a delivery in a par-

ticular case has been reformed to meet the changed requirements of business from what they were 100 years ago.  This modification, and the reason therefor, has been so well set forth by Mr. Justice DEAN in the case of the Keystone Watch Case Company v. Bank, 194 Pa. 535, that we quote at large from that opinion :

" In the eighty years that have elapsed since the decision of Clow v. Woods, 5 S. & R. 275, the rigor of the rule laid down in that case, and it is the leading one in this state, has been greatly relaxed.  Nor, considering the progress in population and wealth and the change in methods of conducting business, could it have been strictly adhered to without great obstruction to business and hardship to individuals.  Under that ruling the cases were rare where as to creditors the ownership of chattels could be in one and the possession in another ; in such circumstances, with few exceptions, the transaction was constructively fraudulent as to creditors.  But in the long line of cases following it, step by step, the rule has been so softened that now it may be said, with few exceptions, where the purpose of the contracting parties was as between themselves an honest one, and there was no concealment, as to creditors, of its true nature, the contract is not constructively fraudulent; in other words, the law will be slow to hold the parties scamps constructively if the contract, in view of its purpose, was actually an honest one."

We do not understand the court to have meant in the case just quoted that there was any change in the rule laid down in Clow v. Woods, but that what would be a sufficient delivery of possession now, owing to the changed conditions of business, might not have been a good delivery at the time the latter case was decided.  And this is the meaning of the opinion of the court in White v. Gunn, 205 Pa. 229.

" Less than a year ago we said ' There has been no deviation from the general rule that delivery of possession is indispensable to transfer of title by the act of the owner that shall be valid against creditors.'  What, however, would be a sufficient delivery of possession and retention of it in one case might not be in another ; and in saying that the rigor of the rule requiring the purchaser to take and keep possession of property purchased by him has been relaxed, nothing more was meant than

that the law does not have nor set up an unbending test of the sufficiency of delivery and retention of possession to be applied in all cases, but that in passing upon the sufficiency of possession taken by the purchaser in a particular case, there must be taken into consideration the character of the property, the use to be made of it, the nature and object of the transaction, the position of the parties and the usages of trade or business."

Let us apply this rule to the case in hand: the purchaser was buying coffee from the company that roasted his coffee, and the Huff Company it must be borne in mind, were not only dealers in coffee ; they stored coffee and roasted it for the trade. The transaction was an honest one. The price paid for the coffee was the current price for that article. The purchaser paid part cash and gave bankable notes for the balance, which he subsequently paid. He left his coffee with the Huff Company to be roasted, as he had been doing for seven or eight years. We do not understand the defendant to contradict the proposition that he could leave the coffee with Huff and still make the sale to him valid as against creditors. Certainly no one would insist that Riggs should have shipped his coffee to Wellsville and reshipped it back to Pittsburg in order to have it roasted. But it is contended that the separation from the coffee of the vendor was not complete. True, they might have placed Riggs' coffee all in one pile ; they might have marked every individual sack ; but how that would have been more of an identification of his coffee than what was done in this case we are at a loss to see. Each pile was marked by a tag which told to the person who looked at it that that coffee was sold to E. H. Riggs, giving the number of bags so sold, which corresponded with the number of bags in the row. And if there was a row of coffee on either side of this Riggs row belonging to the Huff Company, it was separate and distinct from it, both by actual space and by the markings on the Riggs' coffee. And so as to the weighing of the coffee. It is alleged that this was not an accurate weighing, and that there would have to be another weighing out before the actual shipment of the coffee to Riggs. Certainly with the weighing that was done Riggs could have demanded and received all of the coffee that had been set apart to him ; and that is all that is in question in this case. If all of his coffee had not been set apart to him, and if, as between

him and Huff, he had a claim for other coffee, that is not material here, as he is only claiming what was set apart; but if Huff had weighed out to him in the manner in which he did more than 7,000 pounds of coffee, still Riggs could claim the amount set apart. And as the evidence goes to show that this was the ordinary, customary way of weighing out large quantities of coffee such as this, there can be no question but what this was a proper weighing. " Unusual and unnecessary formalities in such transactions are generally a badge of fraud rather than of honesty: " Garretson v. Hackenberg, 144 Pa. 107.

We are of opinion that the admitted facts in this case show that a delivery of the coffee was made to Riggs, and the sale was valid against execution creditors of the Huff Company.

Judgment should be entered for the plaintiff on the verdict.

*Error assigned* was in entering judgment ·on verdict for plaintiff.

*R. B. Petty*, with him *Shiras & Dickey*, for appellant.—The coffee was left with the vendor, apparently, simply for the convenience of the vendee. This, we contend, is not a sufficient reason to account for want of actual delivery and transfer of possession: Trunick v. Smith, 63 Pa. 18 ; Rafferty v. McKennan, 1 Atl. Repr. 546 ; Dougherty v. Haggerty, 96 Pa. 515 ; Lehr v. Brodbeck, 192 Pa. 535 ; Stephens v. Gifford, 137 Pa. 219 ; Brawn v. Keller, 43 Pa. 104 ; Barlow v. Fox, 203 Pa. 114.

*A. S. Moorhead*, with him *John N. Dunn*, for appellee.—The evidence established a delivery: Clow v. Woods, 5 S. & R. 275 ; Keystone Watch Case Co. v. Bank, 194 Pa. 535 ; White v. Gunn, 205 Pa. 229 ; Winslow v. Leonard, 24 Pa. 14; Crawford v. Davis, 99 Pa. 576 ; Shaw v. Levy, 17 S. & R. 99.

OPINION BY MR. CHIEF JUSTICE MITCHELL, January 2, 1906 :

Plaintiff bought of the Huff Company some thousand pounds of green coffee, at specified prices, and received an invoice showing the kinds and the quantity of each. Payment was made partly in cash and partly in a note subsequently paid.

The good faith of the transaction was not impeached, but defendant in this issue, a levying creditor, disputed the sufficiency of the delivery.

The purchase was made in the office of the Huff Company and plaintiff did not see the coffee, but bought on description, as he had done in previous dealings. Plaintiff was a retail dealer who did not sell green coffee, and he testified that the arrangement was that Huff should put the coffee aside for him, mark it, and keep it stored until he gave orders for roasting. No charge was to be made for storage if Huff did the roasting, and a written memorandum to that effect was put on the invoice. All this was in accordance with the custom of the parties in dealings for several years previously.

The coffee was in the storage room on a different floor, and was in bags piled up according to convenience, the kinds being kept separate. On the day of the sale, or the next day, the plaintiff's purchase was set apart in different piles from the Huff stock, in the same room, and on the front bag of each pile a tag was sewed, giving the purchaser's name and address, the kind of coffee, and the number of bags. Exactly how this was done is thus detailed by the witness : " We took the order for the first item of coffee, whatever it called for ; I went to the piles and found how much was in the pile, and if there was enough in that pile to make it, I marked it, and if there wasn't I would go to another until I did get enough; and if there was too much in the pile, I would take away until there was enough left to make out the amount." " Q. Now, take this order of 7,000 pounds of Mocha coffee; tell us how you put that up and what you did. A. That first order was in three separate piles ; each pile was marked with a tab to the front bag, sewed on—how many bags there were in the order and what kind it was, so anybody could see it as they would go along through the aisle. . . . . Q. Now, was there any weighing done by you ? How did you ascertain that the fifty-four bags marked there in the left hand margin amounted to 7,000 pounds ? A. There were five bags taken off the pile and weighed and the average weight of the bags estimated from those five, and then counted from that."

The facts not being disputed, the judge below directed a verdict for plaintiff, reserving the question of law " whether

there is any evidence to go to the jury entitling the plaintiff to recover."

We have already had occasion at this term (Duplex Press Co. v. Clipper Co., ante, p. 207), to say that while this is a permissible form of reservation in an appropriate case, it is not a good form for general use and is not appropriate here. A reservation whether on all the evidence the plaintiff is entitled to recover, would have been bad in form, and yet there is no real difference between that and the question reserved here: Casey v. Pennsylvania Asphalt Paving Co., 198 Pa. 348; Mayne v. Fidelity, etc., Co., 198 Pa. 490. There is no difficulty in ascertaining and expressing the real question at issue and intended to be reserved here. It is very clearly stated by the learned judge himself in his opinion; the real question reserved was whether the setting apart of the coffee as shown by the uncontested evidence was a good delivery as against the vendor's creditors. Where, as in this case, the reserved question is susceptible of clear and simple statement, it is much the better practice to so state it, and thus raise the issue of law directly.

As the learned judge below, however, dealt with the case on the basis of the real question, the error in form becomes immaterial.

On the main question of delivery the judgment is affirmed on the opinion of the court below.