## Nathenson *v.* Crossland, Appellant.

*Sale—Change of possession—Delivery—Fraud.*

Where an owner of a horse and harness purchases them for a sufficient sum, and takes them into his possession for a few days, and thereafter enters into an arrangement with the vendor by which the latter engages in a huckstering business on their joint account, one supplying the horse and the provisions to be sold and the other supplying the wagon, and after this had continued for two months, the purchaser resumes possession of the horse, and after a week it is levied upon by an execution creditor of the vendor, the question whether there had been a sufficient delivery of the horse so as to transfer a valid title to it, is a question for the jury.

Argued April 21, 1913. Appeal, No. 146, April T., 1913, by defendant, from judgment of C. P. Fayette Co., June T., 1910, No. 500, on verdict for plaintiff in case of D. Nathenson v. Joseph T. Crossland. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ. Affirmed.

Trespass to recover damages for the alleged wrongful sale of a horse. Before UMBEL, P. J.

The opinion of the Superior Court states the facts.

Verdict and judgment for plaintiff for $136.87; defendant appealed.

*Errors assigned* were various instructions.

*E. C. Higbee,* of *Sterling, Higbee & Matthews,* for appellant.

*H. S. Dumbauld,* with him *Cottom & Cottom,* for appellee.

OPINION BY MORRISON, J., October 13, 1913:

This is an action of trespass for the recovery of damages for the alleged unlawful sale of a horse by the defendant, a constable. The court below referred the testimony to the jury and a verdict was rendered in favor of the plaintiff for the value of the horse. We think it may now be safely assumed that the jury substantially found the following facts: That on and prior to January 3, 1910, one H. Savitz, was the owner of a bay horse called "Jim" and a cheap harness worth about $2.00, and on that date he sold and delivered said horse and harness to the plaintiff, Nathenson, and received therefor $80.00 in cash; that on the same day the latter took the horse and harness into his actual possession and removed them from the premises of the vendor and kept them in his own stable at a different place for several days. Plaintiff then arranged with Savitz to furnish a wagon and take the said horse and harness and carry on a huckstering business with goods to be furnished by the plaintiff, the horse to be fed out of the gross receipts of the business and the net profits thereof to be divided equally between plaintiff and Savitz. This arrangement was in force for about two and one-half months, during which period the horse was kept usually in Savitz's stable, he making frequent trips with the horse and wagon to plaintiff's place of

business for goods with which to carry on said business. After this business arrangement ended the horse was returned to plaintiff's stable. About a week later the horse was levied upon by the defendant on an execution issued on a judgment against Savitz. In making the levy the defendant broke into the plaintiff's stable which was locked and took the horse away and subsequently sold it at constable's sale. Plaintiff notified the defendant both before and at the sale that the horse was his and not the property of Savitz and forbade the sale. However, the defendant sold and delivered the horse to the purchaser. Plaintiff then brought this action to recover damages and the trial resulted in a verdict in his favor for $136.87 which included some interest allowed by the jury, and judgment having been entered thereon, the defendant appealed.

Appellant's learned counsel filed eleven assignments of error and he has ably argued the case under the following propositions: "1. Under the facts the sale was fraudulent in law and the court should have directed a verdict for the defendant. 2. If it be conceded that the case was for the jury, the instructions of the court in regard to the necessity of a transfer of possession by the vendor to the vendee to make a good title were inadequate. 3. The evidence did not show facts warranting the jury to return a verdict for punitive damages." The counsel say, "this is a case of detained possession, which is a fraud in law, and the court should have so instructed the jury and directed a verdict for the defendant."

The first three assignments of error are aimed at the refusal of the court to hold that the sale of the horse by Savitz to plaintiff was a legal fraud because the plaintiff permitted the horse to go back into the possession of the vendor under the arrangement to which we have above alluded. Appellant's counsel cites Clow and another v. Woods, 5 S. & R. 275; Dewart et al. v. Clement, 48 Pa. 413; McKibben v. Martin, 64 Pa. 352; Evans v. Scott,

89 Pa. 136; Stephens v. Gifford et al., 137 Pa. 219; Barlow v. Fox, 203 Pa. 114; White v. Gunn, 205 Pa. 229; Riggs v. Bair, 213 Pa. 402; Hunter Construction Co. v. Lyons, 233 Pa. 561, and several other cases to support his contention that the sale of the horse by Savitz to plaintiff was a fraud in law because of the manner of the change of possession. But an examination of these and many other cases, and giving due consideration to the peculiar circumstances surrounding the transaction, leads us to a different conclusion, and we cannot agree that the title of the plaintiff to the horse was bad on account of legal fraud. Remembering that the plaintiff paid what the jury considered an adequate price for the horse and harness and took them home with him and held the possession of the same till the joint huckstering arrangement was made, we hold, with the court below, that even though Savitz did retake the possession of the horse and use it for about two and one-half months carrying on a business for himself and the plaintiff, the possession was, if honest and in good faith, actually that of Savitz and the plaintiff, and such an arrangement would not, necessarily, as a matter of law, defeat the plaintiff's title to the horse and harness.

On the authority of Keystone Watch Case Co. v. Fourth Street National Bank, 194 Pa. 535; Huffman v. McIlvaine, 13 Pa. Superior Ct. 108; Renninger v. Spatz, 128 Pa. 524; Cessna v. Nimick et al., 113 Pa. 70; White v. Gunn, 205 Pa. 229; Riggs v. Bair, 213 Pa. 402, and many other cases we think the question of whether or not the plaintiff was the owner of the horse when the defendant levied upon it and sold it was for the jury and that it was fairly and properly submitted to that body, and the court did not err in refusing to hold that the sale of the horse was a fraud in law.

In Keystone Watch Case Co. v. Fourth St. Natl. Bank, 194 Pa. 535, the Supreme Court, speaking through the late Mr. JUSTICE DEAN, said: "In the eighty years that have elapsed since the decision of Clow v. Woods,

5 S. & R. 275, the rigor of the rule laid down in that case, and it is the leading one in this state, has been greatly relaxed; nor, considering the progress in population and wealth, and the change in methods of conducting business, could it have been strictly adhered to, without great obstruction to business and hardship to individuals. Under that ruling, the cases were rare, where, as to creditors the ownership of chattels could be in one and the possession in another; in such circumstances, with few exceptions, the transaction was constructively fraudulent as to creditors. But in the long line of cases following it, step by step, the rule has been so softened, that now, it may be said, with few exceptions, where the purpose of the contracting parties was, as between themselves, an honest one, and there was no concealment as to creditors of its true nature, the contract is not constructively fraudulent; in other words, the law will be slow to hold the parties scamps, constructively, if the contract, in view of its purpose, was actually an honest one."

In our own case of Huffman v. McIlvaine, 13 Pa. Superior Ct. 108, speaking through our Brother W. D. PORTER, we said: "The rule laid down in Clow v. Woods, is not so incapable of accommodation to modern conditions as is sometimes asserted. In his opinion in that case Mr. JUSTICE GIBSON clearly recognized the necessity of considering the relation of the parties and the character of the property and the uses for which it was intended, in determining what was or what was not a sufficient delivery of possession to be valid, as against the creditors of the vendor."

We think these two cases, and many others in harmony therewith, furnish a key to the solution of the legal question involved in the present case. In it there is not a particle of testimony tending to impeach the honesty of the huckstering arrangement entered into between the plaintiff and Savitz at the time the former permitted the horse to be taken away from his stables

and used by Savitz in carrying on the joint business to which we have alluded.

It does not seem probable, under the evidence and the verdict, that the jury found that any material misrepresentations were made by either Savitz or the plaintiff, as to the ownership of the horse, while it was being used by Savitz in the huckstering business. Nor is it made to appear by the evidence that Savitz was or was not indebted at the time he sold the horse, except to one creditor whom he paid. Nor does it appear when the debt represented by the constable's execution was contracted. We regard these points as worthy of some consideration in the disposition of this case: McGuire v. James, 143 Pa. 521.

It is probable that these men found it to their mutual advantage for the one to furnish his wagon and his time and the other to furnish the goods and the horse and harness for the purpose of carrying on the huckstering business. Without such an arrangement probably these parties could not have engaged in this business and we think the case comes within the rule indicated by the two authorities from which we have above quoted.

It seems to us that the question of the plaintiff's title to the horse and harness was a mixed one of law and fact as in Bell v. McCloskey, 155 Pa. 319. It is urged, however, that if the case had to go to the jury the charge was inadequate. But the court pointedly told the jury that the first and most vital consideration was, "who was the owner of the horse on the 23d of April, 1910, when it was levied upon?" There were really no facts in dispute regarding the question of how the horse was permitted to go back into the possession of Savitz. The testimony of the plaintiff and his witnesses on this point was uncontradicted. Whether the admitted facts regarding possession defeated the plaintiff's title as against creditors was largely a question of law. It is evident that the court below was of opinion that if the sale and possession were as alleged by plaintiff, and was

honest, that the plaintiff's title was good and he was entitled to recover. In this view we concur. If appellant's counsel desired more specific instructions on the question of detained possession it was their privilege to so request the trial judge. The question of title was plainly submitted to the jury and their attention was called to the testimony and the court should not be reversed for what was not said in the absence of a request for fuller instructions: Murtland v. English, 214 Pa. 325. Appellant's counsel contend that they raised this question in the point quoted in their fourth assignment of error. But this point could not have been affirmed under the evidence in the case. It practically raised the same question as a point in Rogers v. Schadt, 218 Pa. 617, which the Supreme Court said was rightly refused. We cannot sustain the fourth assignment of error.

The sixth, seventh and eighth assignments complain of certain instructions given to the jury by the learned trial judge. A careful examination of the testimony, the charge of the court and the able argument of appellant's counsel leaves us unconvinced that these assignments raise reversible error and they are not sustained. The ninth, tenth and eleventh assignments attack the instructions of the trial judge on the question of punitive damages. First, we think there was sufficient testimony in the case to warrant the judge in referring the matter of punitive damages to the jury: Pittsburg, etc., Ry. Co. v. Lyon, 123 Pa. 140; Schusler v. Clark, 50 Pa. Superior Ct. 459. Second, in addition to this we are not convinced that the jury allowed the plaintiff any punitive damages. There was testimony that the horse was, at the time the defendant sold it, worth $150, while the verdict was only for $125, with some interest added for the lapse of time between the trespass and the rendering of the verdict. The horse was sold to plaintiff for $80.00 cash, but there is evidence that it was in better condition and worth more at the time the constable

seized it than it was when Savitz sold it. Even if the court was wrong in submitting the question of punitive damages to the jury, these assignments do not raise reversible error because it is not made to appear that the jury allowed anything more than the market value of the horse with a small amount added for the time which elapsed between the seizure and the verdict. The ninth, tenth and eleventh assignments are not sustained.

The judgment is affirmed.