[ PHILADELPHIA, MAY 2D, 1840. ]

## HOFFNER and Others *against* CLARK.

#### IN ERROR.

In trespass against a constable and others for taking a horse alleged to belong to the plaintiff, by virtue of an execution against A. the plaintiff's brother, it appeared in evidence that the horse had belonged to A., who testified that he had sold him to the plaintiff before the execution, for a full price. Another witness produced by the plaintiff testified that the plaintiff and A. lived together, and that after the sale the plaintiff kept the horse in the same stable in which A. had kept him. There was no evidence of any actual change of possession. *Held*, that it was error for the Court under these circumstances to leave it to the jury to say from the evidence whether or not the possession was changed.

ERROR to the District Court for the City and County of Philadelphia, to remove the record of an action of trespass *quare clausum fregit*, &c. brought by Noble Clark against George Hoffner, John Purltz, James Hand and Thomas Bickerton.

The defendant Hoffner was a constable; and the action was brought to recover damages for taking a horse alleged to belong to the plaintiff, by virtue of an execution against one William Clark, the plaintiff's brother.

On the trial before Judge STROUD, on the 16th of January, 1838, the plaintiff produced William Clark as a witness, who testified as follows.

"I have no interest in the matter; nor have I had any interest in the horse since the 27th of May, 1835. I am the plaintiff's brother. I sold him the horse in question on the 27th of May, 1835, for the price of one hundred and twenty-five dollars: another person had offered me the same price. I got paid in full by my brother; he paid me seventy-five dollars in cash, money he had earned with Dr. Mitchell: the balance he was to pay me in work and did pay it. I also sold him a cart and harness. At one time I was seized on myself, but I got them back. The horse was taken in August, 1836. My brother had lent him to James Barney, who was driving the

horse and cart. I was not present at the time they were taken. I knew my brother lent the horse to James Barney. I saw the horse afterwards in possession of the defendant Hoffner. I went to Hoff-ner and told him I had nothing to do with the horse : he belonged to my brother: to let him go : he laughed at me and said he would not. I was in company with Mr. Morrow. I went also to Mr. Hand, and told him the same thing; he said he guessed he would not be sold. When I went to Mr. Hand, I told him that George Hoffner had taken the horse and had him in possession; I said it was an unlawful debt; he said he guessed the horse would not be sold: it was in August, 1836." On his cross-examination he said, "This horse had never before been taken by Hoffner; I was taking care of him for the owner, the plaintiff. It was a roan horse, from seven to eight years old, he was used in a cart. I had him about two months before I sold him to my brother. I traded another horse and forty dollars for him. Neither plaintiff nor myself are married, we boarded in the same house then, I believe ; we board together now. I do particularly recollect the day ; the 27th of May, 1835; I don't recollect the day of the week ; I kept no memorandum of it; he paid me before a month afterwards, part of the money, forty-one dollars; I paid Mr. North for lumber. I was at the sale by Hoff-ner ; there were a good many speculators there; he was sold for forty-one dollars; I had seen him' on the morning he was taken; I fed him myself: I use to feed him for my brother; there was no con-tract between my brother and me." And being again examined by the plaintiff's counsel, he further replied : " My brother had no other horse and cart. David McClean, the constable, bought it for forty-one dollars."

Thomas Brundt, a witness for the plaintiff, testified as follows :

"The plaintiff and William Clark boarded with me at the time Wil-liam sold his horse to plaintiff. The plaintiff bought it for one hundred and twenty-five dollars: seventy-five dollars was paid to William Clark. 1 remember the time; it was the 27th of May, 1835 : the money was paid a few days afterwards. I called upon defendant Bickerton a few days after the horse was taken ; I told him I had heard that Noble's horse had been taken for William's debt. He said he understood Hoffner had been noticed : he could do nothing, it must be left to the law : the horse was in the law's hands and the lawyers must settle it. I went with Mr. Ryers to Mr. Hand ; Mr. Ryers told him the horse did not belong to William Clark, and he (Hand) he understood had the settling of it; that the debt was not due. Hand said he would see Bickerton, who lived nearest to Purltz. I had no acquaintance with any of them and was not at the sale." Cross-examined.—"The plaintiff and William board with me now ; there were no writings between them. William when he owned the horse, used to keep him in a little stable he had built on

(Hoffner *v.* Clark.)

Mr. Wharton's ground; it was kept in the same place after he sold him to the plaintiff; the stable is now pulled down. At the time of the sale I considered him fully worth the amount Noble paid for him. I am certain as to the day from a memorandum then made which I have lately seen. I saw the horse in the morning before he was seized. I was not present at the seizure, and never saw him afterwards. William Clark at the time of the seizure was in Jersey."

Archibald Murphy, a witness on behalf of the plaintiff, testified as follows:

" I took a notice to Mr. Hoffner; I have no copy of it; I told him it was a notice that the horse was not William Clark's; he said he did not care who he belonged to, he would sell the horse." Cross-examined.—"I don't know when this was; I can't recollect the time, nor about when."

John Purltz, one of the defendants, having been acquitted by the jury, was admitted as a witness and testified as follows:

"I conversed with William Clark in May, 1835. I saw and admired the horse: he said he paid seventy dollars; and I thought it cheap. On one occasion when I asked plaintiff for the horse, he (plaintiff) said his brother had no work, and he (plaintiff) no directions about him. I found William Clark in possession of the horse; he said he'd be sorry to lose him as he had paid a good price for him." Cross-examined.—" I had the conversation with the plaintiff about the horse on the day he paid me for sand: this is my receipt for the sand, dated May 19, 1835."

No other testimony was offered.

The defendants' counsel requested the Court to charge on the following points.

" 1st. That there was no evidence of the taking or of a trespass.

2d. The taking and possession are presumed to be lawful: that is a presumption of law and this action cannot be maintained.

3d. Possession was continued in William Clark, and therefore the plaintiff cannot recover.

4th. The value of property is fairly established by a judicial sale.

5th. There was no evidence against Hoffner as constable; and the plaintiff having elected to sue him as such, must prove the trespass by him in that character.

6th. That the jury may sever in their verdict."

The learned judge charged the jury in substance as follows:

" This is an action of trespass for taking a horse said to belong to the plaintiff. There are two principal questions of fact for the jury to consider. 1st. Was Noble Clark the owner of the horse? 2d.

(Hoffner *v.* Clark.)

Was he taken or sold by the defendants, or either of them? It is proved that the horse once belonged to William Clark, and that he sold him to the plaintiff for one hundred and twenty-five dollars; but it is said by the defendants that the possession was not changed. It is a principle of law, that if the possession is not changed, the ownership continues as to third persons, creditors of the original owner; and it is a matter of fact for the jury, to inquire whether or not the possession was changed, and became in the plaintiff. If the jury find that the possession was changed, their next inquiry should be, did the defendants or either of them take the horse? On this point the testimony is slight: there is no positive evidence of taking, but there is incidental testimony derived from conversations with the defendants, from which you may infer the horse was taken. As to the defendant Hoffner, it was proved he had the horse. Murphy told him it was Noble Clark's: he said he'd sell him, he did not care whose it was. It is not necessary to prove the actual taking in fact. If the horse has been proven to belong to Noble Clark, and in another's possession acting for him, and he is found immediately afterwards in the possession of the defendants, or any or either of them, you may infer the horse to have been taken by such person or persons. The testimony against Hand and Bickerton, is not so strong as against Hoffner; but there is some testimony, which the jury will recollect and apply, if they deem it sufficient. If the jury find these two questions affirmatively, then as to the assessment of damages, the plaintiff has a right to recover the value of the horse, and all the damages which are the immediate and natural result of the taking; the jury have a right to give the true value of the horse as shown in the whole evidence in the case, and not merely the price he brought at the sale by Hoffner."

In answer to the points proposed by the defendants' counsel the judge said:—

"1st. There is evidence from which the taking and trespass may be inferred, if the jury think proper to draw such inferences.

2d. There is no law to that effect.

3d. That is a question of fact: if the possession was unchanged the plaintiff cannot recover.

4th. The value of property is not established by such sale.

5th. That is not necessary.

6th. The jury may distinguish between the defendants; acquitting one or two, and finding the other or others guilty."

The charge was excepted to on the part of the defendants, and the jury found for the plaintiff. A writ of error was taken and the following specifications filed.

"1st. There was no evidence to support trespass.

(Hoffner v. Clark.)

2d. The judge erred in charging the jury, that there was evidence from which they might infer the taking to be by trespass.

3d. The judge erred in charging the jury, that there was no law by which the taking and possession are presumed to be lawful; and erred in answering the second point on which he was asked by the defendants' counsel to charge, by saying, 'there is no law to that effect.'

4th. The judge erred in omitting to charge the jury, that the possession was unchanged.

5th. The judge erred in charging the jury, that the value of the property was not to be inferred from any sale.

6th. The judge erred in negativing the fifth point made by the defendant's counsel.

7th. The judge erred in not charging the jury, that there was no evidence against Hand and Bickerton.

8th. The judge erred in instructing the jury, that there was sufficient evidence to support the plaintiff's action."

Mr. *H. M. Phillips*, for the plaintiffs in error.

Mr. *W. L. Hirst*, for the defendant in error.

The opinion of the Court was delivered by

KENNEDY, J.—The only error into which the Court below seem to have fallen in this case, is in having left it to the jury as a question of fact, to be decided by them, whether the sale of the horse alleged to have been made by William Clark to the plaintiff below, his brother, was accompanied or not by a corresponding change of the possession. The requisites of the law, in order to make a sale, by a debtor of his goods and chattels, good against his creditors, are correctly laid down by the Court; but we are of opinion that the Court erred in leaving the question just stated, to the jury : because no evidence appears to have been given on the trial tending to prove or from which it could be inferred by the jury, that the seller of the horse parted with, or that the vendee ever took possession under the sale : on the contrary it appears from the evidence of Thomas Brundt and the seller, who being the brother of the plaintiff and produced by him with Brundt as his principal witnesses, may fairly be presumed to have testified as fully in his favour as the truth of all that passed and took place between them would admit of, that no actual change or transfer of the possession was made : but that the witness from and after the sale kept and fed the horse in the same stable and in the same manner as he had done before, while he was owner of the horse. The creditors of the witness and the rest of the world

(Hoffner *v.* Clark.)

unacquainted with the fact of the sale, had still reason to believe that the witness continued to be the owner of the horse, as the possession was *prima facie* evidence of ownership; and may therefore be presumed to have extended indulgence or credit to him on that account. Hence the law, in order to make sales of personal property good against creditors, and to prevent them from being deceived by appearances, requires that there shall be an actual transfer of the possession, so far as the nature and condition of the property will admit of it. The circumstance of the seller and buyer of the horse here, boarding together in the same house, furnishes no ground for dispensing with such actual change of the possession as will render it distinct and visible, so that it may become notorious. It was surely practicable for the plaintiff to have taken possession of the horse, by placing him in a different stable, and either feeding and taking care of him himself, or to have procured some third person to have done so. But nothing of this kind seems to have been done; and what besides this, seems to cast a shade over the sale, and to render it somewhat suspicious is, that it does not appear that the plaintiff had any use or occasion for the horse when he bought; from which it might be inferred that he did it to accommodate his brother, and to prevent the creditors of the latter, from taking the horse in execution: which, if it were so, would avoid the sale as to them.

The judgment must be reversed and a *venire de novo* awarded.

Judgment reversed and *venire de novo* awarded.