# Barlow, Appellant, v. Fox.

*Sale—Personal property—Transfer of possession—Legal fraud.*

When by the action of the parties there has been a separation of the title and possession of personal property, courts will scrutinize the transaction to determine the real intention, and but little regard will be given to the form which it has taken or the name by which it is called. The law is liberal in not requiring an actual change of possession when it will defeat the lawful purpose of the parties. But there has been no deviation from the general rule that delivery of possession is indispensable to transfer a title, by the act of the owner, that shall be valid against creditors. The rule applies not only to absolute sales, but also to contingent sales and mortgages.

Where the owner of the personal property in a hotel sells the same under a written agreement, and delivers possession, and subsequently the vendees execute a written cancelation of the agreement, at the same time signing a joint note with the seller to a bank for an amount equal to the amount of the unpaid purchase money, and the seller thereupon sells the furniture to a third person as trustee for the bank to secure the note, and the trustee leases the furniture to the original purchasers for one year for an amount equal to the unpaid purchase money with interest, and there is no delivery actual or symbolical, and the trustee never has possession in any manner or form, the trustee has no right to the furniture as against the creditors of the original purchasers, or as against the creditors of a firm which came into possesssion of the property and assumed the debt of the original purchasers.

Argued April 28, 1902. Appeal, No. 72, Jan. T., 1902, by plaintiff, from judgment of C. P. Erie Co., Feb. T., 1901, No. 152, on verdict for defendant in case of George H. Barlow, Trustee, v. G. A. Fox. Before McCOLLUM, C. J., MITCHELL, DEAN, FELL and POTTER, JJ. Affirmed.

Replevin to recover possession of personal property in a hotel. Before WALLACE, P. J., specially presiding.

At the trial it appeared that on April 30, 1894, James Edwards, then proprietor of the Phœnix hotel in the city of Corry, Pennsylvania, sold and delivered, to Thos. F. Oliver, and William E. Oliver, doing business as Oliver Brothers, the business and all the personal property in the hotel, for the sum of $10,000, $4,000 of which was paid in cash and the balance was to be paid in four annual payments of $1,500 each with interest, commencing May 1, 1895.

On August 18, 1897, Oliver Brothers had paid all but $1,500, which, however, was not due until May 1, 1898. James Edwards desired to have the money and to enable him to get it, Oliver Brothers signed a note with him to the Citizens' National Bank of Corry for the amount, and at the same time as part of the same transaction, Oliver Brothers executed a written cancelation and surrender of their contract of April 30, 1894, on the back thereof, to James Edwards. James Edwards executed a bill of sale of said personal property to Geo. H. Barlow, trustee, and Oliver Brothers took back a lease of said property from Geo. H. Barlow. trustee, for one year, agreeing to pay $1,500 with interest, being the amount of the note. The cancelation and surrender of the contract of April 30, 1894, the bill of sale from James Edwards to Geo. H. Barlow, trustee, and the bailment from Geo. H. Barlow, trustee, to Oliver Brothers, was all one transaction, and was done to secure the payment of the note.

Geo. H. Barlow, trustee, never took possession of said property and the possession continued in Oliver Brothers, who carried on the hotel until June 7, 1898, when Thomas A. English purchased the interest of Thomas F. Oliver in said hotel business and property and from that time on the business was carried on by Oliver & English and the possession of said property continued in them.

On August 18, 1898, Oliver & English and James Edwards gave their note to the Citizens' National Bank of Corry, for the sum of $1,545, being the amount of the former note, which they took up, with the unpaid interest, and being an assumption of the same debt. At the same time Oliver & English took back from Geo. H. Barlow, trustee for said bank, a lease or

bailment of said property, for one year, agreeing to pay the sum of $1,500 at the end of said term. This bailment was executed for the purpose of securing the payment of said note, and Oliver & English continued in the possession of said property and carried on the said hotel business.

On August 18, 1899, the note not having been paid, except some interest, they renewed the same and took back a lease or bailment of said property from Geo. H. Barlow, trustee for said bank, for six months, agreeing to pay the same $1,500 as before. The notes were all for the same debt and nothing was paid except interest. Oliver & English still continued in the open possession of the property until possession was taken by their trustee in bankruptcy about October 8, 1900, and they continued to carry on the hotel business until that time. Geo. H. Barlow, trustee, never had any possession of said property. There was no evidence as to whether they were owing others besides the bank when these transactions took place. At the time of the bankruptcy Oliver & English were largely indebted.

On August 28, 1900, Oliver & English were adjudged bankrupt, and subsequently Don F. Smith was appointed trustee. About October 8, 1900, the trustee took possession of the hotel and this property in dispute, and carried on the hotel until November 20, 1900, when the trustee, by order of the United States court, sold all of this property, and also the leasehold of the real estate and the license to sell liquors, at bankruptcy sale, as the property of Oliver & English, bankrupts, and G. A. Fox, the defendant, purchased the same at said sale, he being the highest bidder. Geo. H. Barlow, the plaintiff, was also a bidder at said sale. At said sale Geo. H. Barlow, trustee, gave notice that he claimed said personal property.

The defendant immediately took possession of said property, which he has held ever since, claiming title by virtue of the trustee's sale. The plaintiff brought this action of replevin and defendant gave a claim property bond and retained the goods.

The court gave binding instructions for defendant.

Verdict and judgment for defendant.

*Error assigned* was in giving binding instructions for defendant.

*Albert B. Osborne,* with him *Frank Gunnison* and *C. L. Covell,* for appellant.—The title of an owner of goods is valid against the creditors of a bailee in possession: Brown Bros. & Co. v. Billington, 163 Pa. 76; Ditman v. Cottrell, 125 Pa. 606; Miller Piano Co. v. Parker, 155 Pa. 208; Enlow v. Klein, 79 Pa. 488; Rowe v. Sharp, 51 Pa. 26.

We believe that it is an important fact that nowhere is there a word of evidence showing when Oliver & English became indebted. In the absence of testimony the court cannot presume that they had creditors on the dates of the respective leases from Barlow to them: Ditman v. Raule, 124 Pa. 225; Buckley v. Duff, 114 Pa. 596; McCullough v. Willey, 192 Pa. 176; Foster v. Walton, 5 Watts, 378; Monroe v. Smith, 79 Pa. 461.

*C. S. Burchfield,* with him *U. P. Rossiter,* for appellee.—The courts, in determining whether or not a contract is one of bailment, or one of sale with an attempt to retain a lien for the price, do not consider what name the parties have given to the contract, but what is its essential character: Ott v. Sweatman, 166 Pa. 217; Ladley v. U. S. Express Co., 3 Pa. Superior Ct. 149.

That each of the successive transactions constituted a mortgage is evidenced by the fact that Oliver Brothers and Oliver & English were paying interest all of the time on this loan and were paying nothing for the use of the property: Filon v. Knowles, 2 W. N. C. 226; Boyle v. Ranklin, 22 Pa. 168; Huston v. Regn, 184 Pa. 419; Colwell v. Woods, 3 Watts, 188; Kunkle v. Wolfersberger, 6 Watts, 126; Kerr v. Gilmore, 6 Watts, 405; Kelly v. Thompson, 7 Watts, 401; Welsh v. Bekey, 1 P. & W. 57; Clow v. Woods, 5 S. & R. 275; Kater v. Steinruck, 40 Pa. 501.

The law is well settled in Pennsylvania, that a sale of personal property, without delivery, or an actual change of possession, which must continue in the vendee, is fraudulent per se as to the creditors of the vendor, and the court is bound to so instruct the jury: Clow v. Woods, 5 S. & R. 275; Babb v. Clemson, 10 S. & R. 419; Brawn v. Keller, 43 Pa. 104; Steelwagon v. Jeffries and Wife, 44 Pa. 407; Barr v. Reitz, 53 Pa. 256; Billingsley v. White & Sparhawk, 59 Pa. 464; McKibbin

v. Martin, 64 Pa. 352; Stephens v. Gifford et al., 137 Pa. 219; Janney v. Howard, 150 Pa. 339; Monroe v. Smith, 79 Pa. 459; Buckley v. Duff, 114 Pa. 596; Ditman v. Raule, 124 Pa. 225; McCullough v. Willey, 192 Pa. 176.

OPINION BY MR. JUSTICE FELL, May 19, 1902:

When by the action of the parties there has been a separation of the title and possession of personal property, courts will scrutinize the transaction to determine the real intention, and but little regard will be given to the form which it has taken or the name by which it is called. The law is liberal in not requiring an actual change of possession when it will defeat the lawful purpose of the parties. But there has been no deviation from the general rule that delivery of possession is indispensable to transfer a title, by the act of the owner, that shall be valid against creditors. In Clow v. Woods, 5 S. & R. 275, which is said by Judge SHARSWOOD in McKibbin v. Martin, 64 Pa. 352, to be "the magna charta of our law on the subject," it was decided that there is no difference in the application of the rule between absolute sales and contingent sales or mortgages, and that as to both the retention of possession when actual delivery is practicable, is a fraud in law. In Jenkins v. Eichelberger, 4 Watts, 121, GIBSON, C. J., said: "To tolerate a lien severed from the possession by any device whatever, would be pregnant with all the mischiefs of colorable ownership; and to sanction it at the expense of the community could be justified but by the accomplishment of more important objects than individual accommodation." These decisions have been followed in numerous cases which it is needless to cite. In a review of the cases in this state by the American editors of 1 Smith's Leading Cases, p. 78, it is said: "That mortgages are within the rule has been expressly decided; and it is now established in Pennsylvania, as a general principle of law, that by no device whatever, whether of sale and agreement of resale, or by the title at the time of the purchase being vested in one who is a surety for the purchaser who takes possession, can a lien be created on personal property separate from the possession of it. The delivery must be actual and not merely symbolical where actual delivery is practicable, and if it is not practicable the

parties should leave nothing undone to secure the public from deception."

The facts on which a verdict for the defendant was directed were these : Edwards sold the personal property in a hotel to Oliver Brothers for $10,000. They paid $4,000 and went into possession, agreeing to pay the balance in four equal annual instalments. They paid the first three annual instalments as they became due. Before the fourth was due, Edwards wanted the money, and to oblige him an arrangement was made to obtain it from the Citizens' National Bank of Corry. The parties gave the bank their joint note for $1,500. Oliver Brothers executed a written cancelation of their contract of purchase so as to place the title to the furniture in Edwards, who sold it to Barlow, trustee for the bank, and he leased it to Oliver Brothers for one year for $1,500 with interest. There was no delivery, actual or symbolical, and Barlow never had possession of the furniture in any manner or form. The cancelation of the first contract, the sale to the trustee, and the lease by him were all one transaction, intended to secure the payment of the note. The note was renewed from time to time until the firm of Oliver Brothers was dissolved by the withdrawal of one of its members, and a new firm of Oliver & English was formed. This firm took up the note of Oliver Brothers and gave the bank its note in place thereof, and a new lease was made by the trustee to it. This new arrangement was continued by renewals of the note and lease for over two years, when Oliver & English were adjudged bankrupt, and their interest in the furniture was sold by the trustee in bankruptcy to the defendant, against whom this action was brought by Barlow, trustee for the bank.

There was not a sale to Barlow and a bailment for use by him except in form merely. It was not intended that he should become the real owner of the furniture and that Oliver Brothers should pay him rent for its use. The rent reserved by the so-called lease was the exact amount of the note, and what was paid was interest for the use of the money, not rent for the use of the furniture. The apparent, in fact the avowed, purpose of the whole arrangement was to secure the bank by the pledge of the goods. This pledge was invalid against the creditors of the last firm as well as those of the first.

Oliver & English came into possession of the property as owners, and there was a novation. They assumed the debt, took up the note of Oliver Brothers, gave their note in place of it, and pledged their own goods to secure its payment.

The judgment is affirmed.