## White *v.* Gunn, Appellant.

*Contract—Sale—Personal property—Delivery of possession.*

If a purchaser pays the price for goods purchased by him without taking possession of them, he takes the risk of the integrity and solvency of his vendor when the rights of a subsequent bona fide purchaser or an execution creditor arise.

Delivery of possession of personal property is indispensable to transfer a title by the act of the owner that shall be valid against creditors. In passing upon the sufficiency of possession taken by the purchaser there must be taken into consideration the character of the property, the use to be made of it, the nature and object of the transaction, the position of the parties and the usages of trade or business.

When a purchase of personal property is made in good faith the fair and honest purpose of the vendor and vendee will not be defeated, if the conduct of the parties shows that there was an intention to transfer the possession as well as the title, and the vendee assumed such control of the property as ought reasonably to indicate a change of ownership.

On an issue to determine the ownership of a brick plant including machinery, engines, wagons, horses and other property necessary for the manufacturing of brick, the evidence showed that the former owner came to the office of the plaintiff in the issue, told him that he was "hard up" and would like to have some money. A receipt of the owner to the plaintiff was produced acknowledging the latter's check for $100, and his note for $2,400 payable four months after date in payment of the purchase money for the property purchased, which note plaintiff testified he paid. Evidence was submitted that the price paid for the property was a fair one. The plaintiff testified that he took possession of the property immediately after the purchase, that though he employed the former owner to manage the brickyard for him, he went there five days out of six to look after the business ; that he furnished money to pay the hands, built an additional kiln on the premises, took out the insurance in his own name, advertised the plant for sale, and offered to sell the plant to the defendant in the issue, a fact acknowledged by the latter. Other witnesses corroborated plaintiff's testimony, and testified to additional facts showing his possession. *Held*, that the questions both of the good faith of the transaction,

and of the sufficiency of the possession, were for the jury, and that a verdict and judgment for plaintiff should be sustained.

Argued Jan. 16, 1903.   Appeal, No. 164, Jan. T., 1902, by defendant, from judgment of C. P. No. 4, Phila. Co., Sept. T., 1898, on verdict for plaintiff in case of Lemuel A. White v. John Gunn.   Before MITCHELL, DEAN, FELL, BROWN, MESTREZAT and POTTER, JJ.   Affirmed.

Issue to determine the ownership of personal property seized and taken in execution.

The facts are stated in the opinion of the Supreme Court.

The court refused binding instructions for defendant.

Verdict and judgment for plaintiff.   Defendant appealed.

*Error assigned* was in refusing binding instructions for defendant.

*M. Hampton Todd,* with him *Bamberger & Levi,* for appellant.—This case, under the undisputed evidence, should have been determined by the court in the first instance : Keystone Watch Case Co. v. Fourth Street Nat. Bank, 194 Pa. 535; Stephens v. Gifford, 137 Pa. 219; Barlow v. Fox, 203 Pa. 114.

*Emanuel Furth,* with him *Max Herzberg* and *Jacob Singer,* for appellee.—The case was for the jury : Keystone Watch Case Co. v. Fourth St. Nat. Bank, 194 Pa. 535; Garretson v. Hackenberg, 144 Pa. 107; Goddard v. Weil & Co., 165 Pa. 419; McCullough v. Willey, 192 Pa. 176; Bell v. McCloskey, 155 Pa. 319; Janney v. Howard, 150 Pa. 339; Renninger v. Spatz, 128 Pa. 524.

OPINION BY MR. JUSTICE BROWN, March 23, 1903 :

The complaint of John Gunn, the appellant, is that the jury were allowed to determine the character of the sale of the brickyard plant by his father, Charles B. Gunn, to Lemuel A. White, the appellee.   He insists it was a fraud in fact as well as in law, and that the court should have sustained each of these positions and directed a finding in his favor.   The learned trial judge was clearly of the opinion that the sale was in fact fraudulent, and, incautiously, perhaps, though of this the ap-

pellant cannot complain, told the jury that he was not without a very strong impression on that question, and that, if he were in the box, he would have little hesitation in drawing the conclusion from the evidence submitted that there had been a collusive sale by Charles B. Gunn to Lemuel A. White, for the purpose of avoiding and anticipating an adverse decree against him by putting his property out of the reach of his creditors. But, notwithstanding his own impression, he declined to withdraw the question from the jury, saying: "That, however, is merely my personal impression, and my calling your attention to it is not in any way to bias you or to withdraw from you the the question of whether there was fraud or not on the part of White and Charles B. Gunn. That question is for you to decide. It is as I have already said, peculiarly within your province, and it is to be decided on your own inferences, and not on those of the trial judge." Though the jury might very fairly have determined that the sale was a fraud in fact, there was at the same time sufficient evidence to justify their finding that it was not, and it would have been error for the court to have withdrawn the question from them. The good faith of the transaction was purely for them.

The appellee testified that, on February 26, 1900, a year before the appellant obtained a decree against Charles B. Gunn, he had purchased the personal property which was the subject of the feigned issue; that a day or two before he purchased it Charles B. Gunn came to his office and told him he was "hard up" and would like to have some money. A receipt of Charles B. Gunn to the appellee was produced, acknowledging the latter's check for $100 and his note for $2,400, payable four months after date, in payment of the purchase money for the property purchased, which the appellee says he paid. Evidence was submitted that the price paid for the property was a fair one. In the face of this the good faith of the transaction between the vendor and vendee was for the jury alone, no matter how persuasively the learned counsel for the appellant contend that other features of the case, to which we need not call attention, made it the duty of the court to declare the transfer a fraud in fact.

The jury having found that the sale was in fact honest, was it constructively fraudulent? When we said in Keystone

Watch Case Co. v. Fourth Street National Bank, 194 Pa. 535, that the rigor of the rule as laid down in Clow v. Woods, 5 S. & R. 275, which requires the purchaser of personal property to take and retain possession of it, had been greatly relaxed, we did not say, nor intend to say, that the rule itself is not still the law. It is as true now as it was when the rule was announced in that case, nearly a century ago, that, if a purchaser pays the price for goods purchased by him, without taking possession of them, he takes the risk of the integrity and solvency of his vendor when the rights of a subsequent bona fide purchaser or an execution creditor arise: Stephens v. Gifford, 137 Pa. 219. Less than a year ago we said, " There has been no deviation from the general rule that delivery of possession is indispensable to transfer a title by the act of the owner that shall be valid against creditors: " Barlow v. Fox, 203 Pa. 114. What, however, would be a sufficient delivery of possession and retention of it in one case might not be in another; and in saying that the rigor of the rule requiring the purchaser to take and keep possession of property purchased by him has been relaxed, nothing more was meant than that the law does not have or set up an unbending test of the sufficiency of delivery and retention of possession to be applied to all cases, but that, in passing upon the sufficiency of possession taken by the purchaser in any particular case, there must be taken into consideration the character of the property, the use to be made of it, the nature and object of the transaction, the position of the parties and the usages of trade or business: Crawford v. Davis, 99 Pa. 576; Renninger v. Spatz, 128 Pa. 524; Stephens v. Gifford, supra; Goddard, Hill & Co. v. Weil & Co., 165 Pa. 419; McCullough v. Willey, 200 Pa. 168. When a purchase is made in good faith, the fair and honest purpose of the vendor and vendee will not be defeated, if the conduct of the parties shows that there was an intention to transfer the possession as well as the title and the vendee assumes such control of the property as ought reasonably to indicate a change of ownership. Knowing this to be the rule, the learned trial judge could not, as a matter of law, with the evidence before him upon which the appellee relied to show that he had taken and retained possession of the property, have declared the transaction constructively fraudulent.

If the jury believed this evidence, they were justified in finding that the sale was as honest in law as it was in fact.

On the cross-examination of the plaintiff and his witnesses, and from the testimony offered by the defendants, it is true, facts were developed which fully warranted the contention that there ought to have been a finding that there had not been a sufficient change of possession ; on the other hand, if the jury believed what was offered by the plaintiff to prove that he had taken and retained possession of the property he had purchased, their verdict was fairly for him and cannot be disturbed.   The property purchased was a brick plant, including brick machinery, two engines and boilers, drier, blower, five kilns, trucks and tracking, horses, carts, wagons, harness, shedding and other appliances which were upon the premises and needful in manufacturing, drying, burning and delivering 32,000 bricks per day.   The vendee had an option to purchase the yard itself. He testified that, after he purchased the property, he took immediate possession of it ; that he manufactured bricks, hauling clay from other grounds to the yard ; that, though he employed Charles B. Gunn and his son, Frank, to manage the brickyard for him, he went there five days out of six to look after the business, and furnished the money to pay the hands ; that he built a sixth kiln on the premises ; that he advertised the plant for sale ; that the insurance was taken out in his name.   He further stated that three days after he purchased the property, and more than a year before John Gunn obtained his decree, he told the latter he had purchased it and offered to sell it to him for $3,000.   This statement was admitted to be true by the appellant.   Charles Horner, a witness called by the plaintiff, testified that he knew the brickyard had been sold to the appellant, who had taken possession of it in February, 1900, and some weeks had been in the yard ten or twelve times.   Frank Gunn testified that the appellee had taken possession of the place and continued in possession until the trial of the feigned issue ; that he was there looking after the business four or five days a week.   John E. White, another witness, testified that his brother, the appellee, had taken possession of the plant and that he went up to look after the business for him from time to time and to see that things were going right.   One of the witnesses called by the defendant testified that he had received

a bill with the name " Charles Gunn & Co." crossed out and Lemuel A. White's on the top of it, and that the appellant had told him his father had sold the brickyard to White.   Another said he had called on White to collect the amount of a bill which had been charged against him for something furnished to the yard, and found him there.   Still another, who called at the yard to purchase materials that had been advertised for sale by White, stated he had seen him there frequently and for a year had known him to be the owner of the plant.   From the testimony to which we have called attention, plaintiff's case was clearly for the jury, whose finding could have been either way, and the judgment on their verdict is affirmed.