## Bisbee Linseed Company v. Phœnix Paint & Varnish Co. et al.

*M. Norman Du Bois,* for plaintiff in interpleader.
*C. Wilfred Conard,* for defendant in interpleader.

BROWN, JR., J., September 21, 1933.—Following the entry of judgment by Bisbee Linseed Company against Phœnix Paint & Varnish Company, W. Gentry Hodgson, William W. Hodgson, and John D. Boyce on several judgment notes, and assessment of damages in the amount of $2,122.55, a fi. fa. was issued against John D. Boyce only, and certain personal property, consisting of office furniture, showcases, paints, etc., located at 2038 North Front Street, Philadelphia, was levied upon and appraised by the sheriff at $904.80. A property claim having been filed by the latter's son, John H. Boyce, the sheriff presented his petition and rule for an interpleader. This rule was made absolute by agreement and an issue framed to determine the ownership of this property. A statement of claim was filed by the claimant, John H. Boyce, and an answer thereto by the plaintiff, Bisbee Linseed Company. The questions of fact were submitted to the jury, who rendered a verdict in favor of the claimant. Plaintiff, as the defendant in the interpleader proceedings, filed motions for a new trial and for judgment n. o. v., and these, having been argued before the court in banc, are now before us for determination.

On June 24, 1929, the claimant, who is in the real estate business, lent his father, John D. Boyce, the sum of $4,000, with the understanding that he was to receive security for it. The latter failed to furnish this and also to keep up the payment of interest, and, having paid nothing on account of the principal of the loan, he executed on July 1, 1931, a bill of sale to the claimant of the stock, fixtures, and goodwill of the paint store conducted by him since 1886, under the name of John D. Boyce & Company, at 2038 North Front Street. On the same day, the claimant executed a bill of sale of the business to Luke Greenhalgh, Jr., and received from the latter his note in the amount of $5,000. Greenhalgh then filed the certificates required by the Act of June 28, 1917, P. L. 645, in the office of the prothonotary on August 5, 1931, and in that of the Secretary of the Commonwealth on August 6, 1931, that he was carrying on business under the assumed name of John D. Boyce & Company. He did not have sufficient money of his own to invest in the business, and he arranged with claimant to pay him out of its profits. During the following 6 months the business just broke even, and so upon claimant's returning his note for $5,000 Greenhalgh executed a bill of sale of the business to him in January 1932. Claimant then filed the certificates required by the Act of June 28, 1917, supra, on January 13, 1932, with the Secretary of the Commonwealth and on January 14, 1932, with the prothonotary, that he was conducting business under the name of John D. Boyce & Company.

Greenhalgh had been employed in the store for 27 years, and after he acquired title to the business he continued to manage it, to keep the books, make the purchases, sell the goods, and write out checks, as he had been doing for upwards of 12 years. Checks were not signed by him but by John D. Boyce until January 1932, when claimant commenced to do so. This was due to the arrangements made at the bank, which refused to relinquish the deposit of approximately $1,000 until the note of John D. Boyce was assumed by claimant, when the deposit was turned over to him. During the 6 months John D. Boyce was around the store, receiving wages of $5 a week, but all that he did was to put "bills in envelopes and things of that kind". He was 80 years of age and his memory was not dependable.

The failure of claimant to contribute capital to the business was no doubt due to the fact that it needed none. It carried itself. True, the stock may have been worth only $1,500, but the paint was not the only thing sold. The bills of sale included the goodwill of the business, and this must have been of considerable value after 45 years. In addition, the bank account used in the business became the property of the claimant. The $4,000 advanced by claimant to his father appears to have been a fair and proper consideration for the business. That the father lived with the son was only natural, considering his age. Besides, the paint, putty, brushes, etc., levied upon were acquired after claimant purchased the business from his father.

Plaintiff stresses the fact that claimant did not obtain a written statement or list of the creditors with the amounts due them. However, it appears that the only indebtedness of the business was to the bank, and, even if given, plaintiff's name would not have appeared because John D. Boyce did not sign the notes on which judgment was entered until some 4 months after he executed the bill of sale. Apparently plaintiff has in mind the provisions of the Act of May 23, 1919, P. L. 262, relating to sales in bulk, but no "proceedings were taken to set aside the sale as provided by that act": Northrop v. Finn Construction Co., 260 Pa. 15, 19; and if there was any violation of its provisions, plaintiff cannot now take advantage of them: Gibbon v. Arronson et al., 80 Pa. Superior Ct. 36.

The questions of the good faith of the transactions whereby claimant obtained title to the business, the delivery of possession, and the control exercised over it by John D. Boyce were submitted to the jury, and the verdict determines them in claimant's favor. In White v. Gunn, 205 Pa. 229, where the sale of a brickyard plant was considered, although the "trial judge was clearly of the opinion that the sale was in fact fraudulent" (p. 230), the question of "the good faith of the transaction between the vendor and vendee was for the jury alone" (p. 231). The transaction in that case was completed a year before the decree against the vendor was obtained, and in the present case the claimant obtained title a year before judgment was entered against his father. This was August 25,1932, on notes dated November 9, 1931, and so claimant's title antedates his father's obligations to pay plaintiff. Furthermore, in that case the vendor was employed to manage the business, whereas in the present case claimant's father acted only as a clerk and received nominal wages. Claimant visited the premises and exercised control over the management of the business. At his direction the store was painted, and, although the name under which the business was conducted remained the same, notice of the change in ownership was given to the public by the filing of the certificates above referred to. Indeed, before judgment was entered, claimant had assumed the bank obligations of the business and was signing checks. His intention, and that of his father, was to transfer possession as well as title, and his control over the business and its property indicated a change in ownership. And, considering the bills of sale, the filing of certificates under the Act of June 28, 1917, supra, and the other facts before us, we do not think that as a matter of law we can pronounce the transfer of the business fraudulent and void.

Thus, in Northrop v. Finn Construction Co., 260 Pa. 15, where an individual transferred his business as a building contractor to a corporation bearing his name, becoming its president and assisting in its management, it was held (pp. 20, 21) : "There was also evidence tending to show that there was no visible change in the possession of the property or in the conduct of the business. In our opinion sufficient appeared to make it a question for the auditor and court below to determine. While much of the testimony was weakened by the cross-examination it was still a question of fact, wherein the finding of the auditor approved by the court is as conclusive as the verdict of a jury. It was a question of fact whether the change of possession was all that could be reasonably expected taking into view the character and situation of the property and the relation of the parties: Renninger v. Spatz, 128 Pa. 524. In Garretson v. Hackenberg, 144 Pa. 107, the property of a lumber camp was sold and remained in the same place and the vendor was retained as foreman. It was there held that the question of change of possession was for the jury. . . . A purchase will not be declared fraudulent in law where the conduct of the parties shows that there was an intention to transfer the possession as well as the title and the vendee assumes such control of the property as ought reasonably to indicate a change of ownership: See opinion of present Chief Justice Brown in White v. Gunn, 205 Pa. 229, 232."

Plaintiff cites and relies upon Bowersox v. Weigle & Myers, 77 Pa. Superior Ct. 367, Menamin v. Automobile Banking Corp., 107 Pa. Superior Ct. 372, and Root v. Republic Acceptance Corp., 279 Pa. 55, but automobiles were involved in each of those cases and not personal property of the kind now before us. Automobiles are capable of manual possession, but office furniture, store equipment, and a stock of goods such as the paint in the present case were of such bulk and so situated as to be incapable of such delivery, and constructive delivery thereof was sufficient. True, among the assets of the business was a Ford truck,

and although title to it was not transferred until after July 1, 1931, it was registered in claimant's name and used in the business conducted by him upwards of 8 months before plaintiff entered judgment. It was merely one of a number of articles of personal property which, as part of the business, was transferred with it. "The distinction is obvious between articles of merchandise readily capable of manual possession and property of such bulk or in such condition or so situated as to be incapable of such delivery. Circumstances affecting property of the latter kind may remove any false appearance of ownership in the vendor, in which case the question of the bona fides of the transaction becomes one for the jury under proper instructions, and a constructive delivery may be sustained. In the case of property readily susceptible of actual delivery there must be not only a delivery, but a continuing possession in the vendee for such time as would reasonably give notice to all concerned of the change of ownership": Bowersox v. Weigle & Myers, supra, p. 371. The good faith of the transaction whereby claimant obtained title and possession of the business of the paint store and the various articles of personal property connected therewith was properly a question of fact for the jury.

Plaintiff also cited Barlow v. Fox, 203 Pa. 114, but in that case there was not only no delivery of the furniture but also no intention to transfer title; in the present case, the clear intention to transfer title was carried out by the claimant taking over the business assuming and paying its obligations.

In Newman v. Globe Indemnity Co., 275 Pa. 374, also cited by plaintiff, the rule that in a sale of personal property there must be a change of possession was held not to be applicable to the facts there under consideration, and so it seems unnecessary for us to discuss it.

Plaintiff contends that the trial judge did not apply the law to the facts of the case. He referred to the testimony of the witnesses. He stated the law to them, and as he did so he pointed out the questions which they were to determine and the factors necessary for them to consider. For him to have gone further and to have dissected each item of testimony and applied the law thereto would have unduly prolonged the charge and tended to confuse them. His statement to the jury that the notes on which judgment had been entered were "not the notes of John D. Boyce & Company, that is, this paint store at 2038 North Front Street, but the indebtedness is that of John D. Boyce, who signed the notes for the Phœnix Paint & Varnish Company", was in accordance with the testimony. Indeed, the notes indicate that to be the fact. Plaintiff's argument that it was prejudiced thereby is not persuasive, for no erroneous satement of the evidence was made and no inferences drawn therefrom by the trial judge. ". . . we are satisfied the jury was not misled when the charge, as a whole, is considered. It has been held many times that it is unfair to refer to detached excerpts, where the charge, in its entirety, lays down the correct principles and presents the issues of fact fully to the jury:" Kitay v. Halpern, 104 Pa. Superior Ct. 167, 168.

Plaintiff is not entitled to a new trial on the ground of after-discovered evidence, for "the evidence must have been discovered since the trial, and be such as could not have been obtained at the trial by the use of reasonable diligence; it must not be simply corroborative or cumulative or merely to impeach the credibility of a witness; and it must be such as would likely result in a different verdict if a new trial were granted:" Hornick et al. v. Bethlehem Mines Corporation, 310 Pa. 225, 228; and testimony that John D. Boyce had other obligations on July 1, 1931, would only tend to impeach his credibility. Indeed, the copy of the letter from a bank attached to the brief refers to its claim against the Phœnix Paint & Varnish Company and to the fact that the notes were

endorsed by him individually. If this is the fact, it would only be cumulative of the notes on which judgment was entered. Besides, it does not appear that claimant knew of the latter; to the contrary, he testified that he did not know his father had signed these notes, and this coupled with the fact that it was he, and not his father, who sought the transfer of the business of the paint store, is persuasive that there was no fraud in the transaction.

The motion for judgment n. o. v. is dismissed, and a new trial is refused.