McElvain, Trustee, Appellant, v. Hooton.

Argued April 23, 1936.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*J. Campbell Brandon,* of *Brandon, Brandon & Ross,* with him, *Carmen V. Marinaro,* for appellant.

*James E. Marshall,* of *Marshall & McCandless,* for appellee.

OPINION BY STADTFELD, J., July 10, 1936:

This is an action of assumpsit for the recovery of the proceeds of sale of certain personal property, the title to which was in dispute. The jury found in favor of defendant.

The facts are correctly stated in the opinion of the lower court, WILSON, P. J., overruling motion ex parte plaintiff for judgment n. o. v. from which we quote as follows: "When Jerry Clyde Stokes was adjudicated a bankrupt February 14th, 1934, he had in his possession on his farm certain horses, cows, farm machinery, etc., title to which was claimed by Nell G. Hooton, a sister of Stokes, and an issue was awarded and framed by the court between the plaintiff trustee and said Mrs. Hooton to determine title to said personal property. The plaintiff made out a prima facie case by proving the bankruptcy of Stokes, his possession of the personal property, and plaintiff's appointment and qualifying as trustee of the bankrupt estate. The defendant offered evidence that she had, over a period of years prior to the date of bankruptcy, loaned or furnished to her brother Stokes, sums of money aggregating $2,500.00,

which was used by him in purchasing stock and equipment for the farm and which Stokes never repaid. On April 27th, 1933, Stokes and Mrs. Hooton went to the office of J. B. Wallace, their nephew, an Attorney at Pittsburgh, Penna., where he drew up a bill of sale for the personal property in controversy, which bill of sale was executed by Stokes and delivered to Mrs. Hooton in the attorney's office that day. Stokes and Mrs. Hooton went to the farm later on the same day where Mrs. Hooton fed and milked the cows, and on April 29th, 1933, Mrs. Hooton and Stokes entered into and executed a bailment contract in which Mrs. Hooton leased the personal property in controversy to Stokes for a period of five (5) years at a rental of $15.00 per month, and Mrs. Hooton returned to the home of herself and husband at Grove City, Penna. A short time thereafter, Stokes entered into a contract of employment with the New Add Company, his services to be rendered for the said Company, in Indiana and Westmoreland counties. In June 1933, Stokes and all of his family except his 18 year old son, Jerry, Jr., left the farm for Indiana County, for the purpose of Stokes entering upon his employment with the New Add Company, and Mrs. Hooton, her husband and family went to the farm, took charge of the same, operated the dairy and delivered milk to the retail customers in Grove City, the minor son of Stokes assisting. At the expiration of two weeks, Stokes returned to the farm, having given up his job with the New Add Company, and Mrs. Hooton and her family returned to their rented residence in Grove City, which they had not given up while staying on the farm, and Stokes thereafter continued in possession of the personal property, operated the dairy and paid the rental under his lease from Mrs. Hooton up to the date of his adjudication as a bankrupt." The testimony further showed that when Mr. Stokes returned from Westmoreland County, Mrs. Hooton arranged to put the bail-

ment lease into effect again and permit Mr. Stokes to remain on the farm with the goods in his hands under the bailment lease, and in order to give full notice that the bailment lease was restored, Mrs. Hooton took the same to Butler and recorded it in the Prothonotary's office.

It also appeared in evidence that one Clithero held a mortgage given by Mr. Stokes, accompanying a bond of the latter, secured on the farm owned by Stokes. In December 1933, Clithero entered the bond that he held against Stokes in the Court of Common Pleas of Butler County, and issued a writ on which the Sheriff levied upon certain horses, cows and farm implements that were on the farm. It also appeared that Mrs. Hooton in that proceeding, claimed the property levied on. Before that issue could be determined, in February of 1934, Mr. Stokes filed a voluntary petition in bankruptcy in the District Court of the United States for the Western District of Pennsylvania. In Schedules in bankruptcy filed by Mr. Stokes, he did not schedule certain horses and cows and farm machinery then on the farm and which are now in controversy. When the trustee in bankruptcy claimed title to the property in question, and Mrs. Hooton made claim thereto, it was agreed, on account of the care required to be taken of the horses and cows, that Mrs. Hooton was to deposit $1,193.65, the appraised value of the property claimed, in substitution for the horses, cows, and farm implements, and take the same, pending the determination of the question of title thereto.

The case was given to the jury in a charge under which they were to determine whether in the spring of 1933, Mr. Stokes was indebted to anyone else than Mrs. Hooton and whether or not he was indebted to her, stating: "These writings, as I understand the law, are good as between the parties, but if he was in debt at that time, then another rule of law applies and in order to

make a writing such as this bill of sale effective in law, there must be an actual transfer or change of the possession of the goods and chattels set out in the bill of sale in order to make it effective and good in law as against any other creditor of Mr. Stokes whose rights might be prejudiced thereby. The question of fact for you to determine, under the evidence in this case, is whether or not, after the 27th day of April, 1933, Mrs. Hooton did go onto that farm and take actual possession of this personal property, claiming it as her own and such a possession that would indicate to the public and to other creditors, if any, of Mr. Stokes that Mrs. Hooton was the owner of and in possession of the said goods and chattels. ...... you must find as a fact that in the spring of 1933, either on April 27th or 28th, or during the two weeks in June, 1933, that Mrs. Hooton took actual physical possession and control of these different articles and machinery in the bill of sale as her own, and the acts of possession by which she took over this property were such as would indicate to any person, a change of possession or change of ownership, if you are not convinced by the weight of the testimony that she did take such possession and are convinced that he had at that time, other creditors who would be injured thereby, then your verdict would be in favor of the plaintiff."

The jury found in favor of defendant. This was the second trial of the case, the first trial having also terminated in a verdict for defendant.

The only assignments of error are to the refusal to give binding instructions in favor of plaintiff, and in overruling motion for judgment non obstante veredicto.

As stated in the opinion of the lower court: "This is a close or border line case". The court quotes from the opinion of Mr. Justice PAXSON in Evans v. Scott, 89 Pa. 136, at p. 138: "There was a time when this ruling might not have been error. It could have been

sustained under the earlier cases of Clow v. Woods, 5 S. & R. 275; Babb v. Clemson, 10 Id. 419; Hoffner v. Clark, 5 Whart. 545; Brawn v. Keller, 7 Wright 104; Steelwagon v. Jeffries, 8 Id. 407. But there is a line of authorities which to some extent has modified the doctrine of these cases. ...... they were carefully reviewed by the present chief justice in McKibbin v. Martin, 14 P. F. Smith 352, ...... It was held that 'where there has been a sufficient delivery, actual or constructive, and the vendee is in possession, the fact that the vendor is employed about the establishment in a capacity holding out no indicia of ownership, is not such a concurrent ownership as the law condemns, and the question is for the jury' ...... It was said in McVicker v. May, 3 Barr 224, that it was not necessary for a son to turn his father out under such circumstances. There are many instances in which from the necessity of the case there can only be a constructive delivery of possession. In such cases the jury must decide whether there is fraud in fact, under proper instructions from the court. ...... The question should have been submitted to them whether the change of possession was actual and bona fide—not pretended, deceptive and collusive; and whether such change of possession was all that could reasonably be expected of the vendor, taking into view the character and situation of the property, and the relations of the parties."

See also, Crawford v. Davis, 99 Pa. 576; Renninger v. Spatz, 128 Pa. 524, 18 A. 405, wherein the Supremê Court says, at p. 526: "We are of opinion that the learned judge did not err in refusing to hold as matter of law that the delivery of possession was insufficient. It was for the jury to find from the evidence whether the sale was in good faith or colorable, and whether the 'change of possession was all that could reasonably be expected of the vendor, taking into view the charac-

ter and situation of the property and the relations of the parties'."

To same effect see White v. Gunn, 205 Pa. 229, 54 A. 901 and Northrop v. Finn Construction Co., 260 Pa. 15, 103 A. 544.

During the two weeks from June 8, 1933, independent of the acts of ownership manifested by the defendant on the evening of April 27, 1933, the latter was in sole and exclusive possession and could have removed or sold the property in question. Under the evidence, there was presented a question of fact for the consideration of a jury, whose finding could have been either way. It would have been error to have withdrawn it from their consideration.

The cases referred to supra fully support the conclusion of the lower court.

The assignments of error are overruled and judgment affirmed.